[No. 30487. Department Two. September 24, 1948.]

*In the Matter of the Estate of* ARTHUR G. DUNN, *Deceased.*
ARTHUR G. DUNN, JR., *et al., as Executors, Respondents,* v.
THE STATE OF WASHINGTON, *Appellant.*[1]

[1]Reported in 197 P. (2d) 606.

*The Attorney General* and *Philip W. Richardson*, for appellant.

*Bayley, Fite, Martin & Shorts* and *Arthur G. Dunn, Jr.,* for respondents.

BEALS, J.—Arthur G. Dunn and Jeannette Williams Dunn, who, for many years, had been husband and wife and residents of the state of Washington, May 6, 1927, signed and acknowledged before a notary public an instrument, in writing, in the nature of a community property agreement, made pursuant to Rem. Rev. Stat., § 6894 [P.P.C. § 434-39], *infra.* The agreement was also witnessed by two persons.

The preliminary paragraph of the agreement reads as follows:

"KNOW ALL MEN BY THESE PRESENTS: That we, ARTHUR GEORGE DUNN, and JEANETTE WILLIAMS DUNN, husband and wife, residents of Seattle, Washington, do promise, agree and covenant each with the other, and also make this our Last Will and Testament as follows, to wit: . . ."

The foregoing paragraph clearly indicates the intention of the parties to make a definite agreement, each with the other, concerning the disposition to be made of their community property, and also to make a joint will.

The first and second paragraphs of the agreement read as follows:

"FIRST: All of the property which we now own or may hereafter acquire is and shall be our community property as under the laws of the State of Washington, both personalty and realty.

"SECOND: Upon the death of either of us the survivor shall have all of said property before named to use, own, enjoy, sell, lease or encumber and dispose of, during his or her life as the case may be, and upon the death of the survivor of us the unused and undisposed of portion of such property only shall go to the Trustee hereinafter named for the uses and purposes hereinafter stated, save as to each of our children Arthur George, Edward Bernard, Jeanette Gertrude, Dorothy and Morris Spencer Dunn, and any child or children hereafter born, we leave upon the death of either and each of us the sum of one dollar ($1.00)."

The agreement continues by providing for the payment of debts, upon the death of either party, for the nomination of a trustee to receive and hold the property left by the survivor in trust for the children of the parties, with directions for the disposition of the income from the estate, each party naming the other as executor of the agreement, "as a testamentary disposition of the property," and providing for the ultimate distribution of the property in accordance with the agreement.

Mrs. Dunn died September 7, 1929. Mr. Dunn was appointed executor of her estate, filing an inventory of the property belonging thereto, and causing the property to be duly appraised. This inventory listed all of the community property, real and personal, belonging to Mr. and Mrs. Dunn, and in the margins appear notes as follows:

In connection with the first group of real-estate descriptions, "Community Interest of Decedent with Arthur G. Dunn, in and to Real Estate situated in King County, State of Washington." In connection with certain other real-estate descriptions, "Community Interest of Decedent in and to undivided half interest therein with the Estate of Helen Ainsworth, Deceased." In the margins of the pages

of listings of personal property appears "Community Interest of Decedent therein."

A page entitled "Recapitulation of Inventory," summarizing the separate listings above referred to, shows, in one column, "Total Appraised Value," and, in an adjoining column, "Community Interest of Decedent." At the end of the page appears "Total Appraised Value—$862,870.95. Total appraised value of all community property—$726,302.30. Community Interest of Decedent—$363,151.16."

In due time, the executor filed his final account and his petition for distribution of the estate. The account and petition came on regularly for hearing before the court March 3, 1943, and, by order dated that day, the court approved the account and decreed the distribution of the property. The following portions of the decree are pertinent to this inquiry:

"It Is Hereby Adjudged and Decreed as follows:

"(1) That the distributees named in said will, to-wit, Arthur G. Dunn, as surviving spouse, the children of said deceased hereinabove named, the living grandchildren of said deceased, to-wit, Christopher T. Bayley, Emery P. Bayley, Jr., Jeanette G. Jackson and Nagle Jackson, together with any other grandchildren hereafter born, and the Seattle-First National Bank of Seattle, as successor to the Dexter Horton National Bank of Seattle, are the only persons and parties entitled to share in said estate and to receive the same.    .    .    .

"(3) That under the terms and provisions of Paragraph Second of said Will and Agreement, as hereinbefore set forth, it was the intent and purpose of the deceased and her spouse, the petitioner herein, that the survivor of them should upon the death of the other have all of the community property covered by said Will and Agreement with the right and power to use, own, enjoy, sell, lease or encumber and dispose of during the survivor's life, and that said deceased and the petitioner did intend thereby to empower the petitioner, as surviving spouse, to dispose of any or all of said property during his life by giving the same, or such part of it as he might elect, to the children of said deceased and himself, and that any such gifts heretofore made by said petitioner, as surviving spouse, were a valid and legal exercise of such power, both as to real estate or personal

property so disposed of, the same being within the intent of the parties to said Will and Agreement and within the powers granted to said surviving spouse by the language used in Paragraph Second of said Will.

"(4) That as to any residue of the property included in and a part of said estate, together with the survivor's community one-half thereof remaining unused and undisposed of by sale or by gift to the children of said deceased and the surviving spouse, shall be distributed on the death of said surviving spouse in accordance with the provisions of Paragraph Fourth of said Will and Agreement, and that the aforesaid children of said deceased and the petitioner, being now all above the age of thirty (30) years, which is the time fixed for the final distribution of Trust Fund 'B' as set forth in said paragraph, are entitled upon the death of said Arthur G. Dunn to immediate distribution of 70 per cent. of said residue; that as to the remaining 30 per cent. of said residue, the Seattle-First National Bank of Seattle, as successor to Dexter Horton National Bank of Seattle, as Trustee, is entitled to receive the same subject to the terms and provisions of said Paragraph Fourth of said Will and Agreement.

"(5) That pursuant to the foregoing, the property of said estate be, and the same hereby is distributed to Arthur G. Dunn, the surviving spouse of said deceased, pursuant to the provisions of Paragraph Second of said Will and Agreement, with the power and right during his life, to use, own, enjoy, sell, lease or encumber and dispose of as he may desire and see fit, including the right and power to dispose of said property, or any part thereof, by way of gift to any and all of the children of said deceased and himself, and that upon the death of said Arthur G. Dunn any unused or undisposed of property included in said estate be thereupon distributed 70 per cent. thereof equally to the said children, to-wit, Jeanette Gertrude Jackson, Dorothy A. Bayley, Arthur George Dunn, Edward Bernard Dunn and Maurice (or Morris) Spencer Dunn, and 30 per cent. thereof to Seattle-First National Bank of Seattle, as Trustee, under the terms and provisions of Paragraph Fourth of said Will and Agreement."

The court then declared the estate closed and the executor discharged.

In the course of the administration of Mrs. Dunn's estate, the executor paid the state of Washington an inheritance

tax in the sum of $11,550.39, which amount was demanded by the supervisor of the inheritance tax and escheat division of the tax commission of the state of Washington as the sum due from the estate by way of inheritance tax thereon.

The inheritance tax division, January 31, 1931, wrote to the attorney for Mrs. Dunn's estate, enclosing a receipt from the state treasurer showing payment of the inheritance tax due from the estate of Jeannette Williams Dunn.

It is agreed that this tax was, in fact, calculated by the inheritance tax division upon one half of the community property belonging to Mr. and Mrs. Dunn (evidently based upon the inventory filed by Mr. Dunn, as executor of Mrs. Dunn's estate).

The decree of distribution recited that "all estate and inheritance taxes due to the United States and State of Washington have been fully paid."

Arthur G. Dunn, the other party to the community property agreement and will above referred to, died testate in King county, Washington, October 11, 1945. He left a will expressly stating that he bequeathed thereby only his separate property, acquired by him subsequent to the death of his wife, Jeannette Williams Dunn, which property was not within the terms of the agreement that had been probated as Mrs. Dunn's will.

This later will was admitted to probate, two of Mr. Dunn's sons having been appointed executors thereof. Thereafter, these executors filed an inventory of the property in Mr. Dunn's estate, including therein only the property which he had acquired after his wife's death, and including none of the residue of the community property belonging to the parties, which had been before the court in the course of the administration of Mrs. Dunn's estate.

The executors of Mr. Dunn's will also filed a report with the inheritance tax and escheat division, showing the property inventoried by them as belonging to Mr. Dunn's estate.

All inheritance taxes claimed to be due by the state inheritance tax and escheat division, upon the property inventoried by the executors in Mr. Dunn's estate (being the property he acquired after Mrs. Dunn's death), have been fully paid.

The supervisor of the inheritance tax division, in due time, made findings, based upon the information contained in the executors' tax report, in which the supervisor claimed a further tax, in connection with the probate of Mr. Dunn's estate, calculated upon one half of the unconsumed community property which had been administered upon in the course of administration of Mrs. Dunn's estate.

The executors of Mr. Dunn's estate filed objections and exceptions to the supervisor's findings, basing their objections upon the ground that the entire community property passed upon the death of Mrs. Dunn, by virtue of the agreement above referred to; that the title to the community property became immediately vested in the five children of the parties and the trustee named in the agreement, subject only to what they contend was Mr. Dunn's life estate therein, and that title to none of the community property passed or was transferred upon Mr. Dunn's death, nor by the terms of his will.

The executors also objected to the values placed by the supervisor upon the residue of the community property remaining at the time of Mr. Dunn's death. This latter objection was not considered by the court, nor was any evidence submitted in connection therewith, because of the construction placed upon the agreement by the court, *infra*.

The questions at issue between the parties were presented by the supervisor's claim and findings, and the exceptions thereto filed by the executors of the estate of Arthur G. Dunn.

The matter was submitted to the superior court for decision and resulted in the entry of an order sustaining the executors' exceptions, and adjudging that all inheritance taxes due to the state of Washington from the estate of Arthur G. Dunn, deceased, had been fully paid, and that

the executors were entitled to receive from the state of Washington a receipt in full for such inheritance taxes.

From this order, the state of Washington, through the inheritance tax and escheat division of the state tax commission, has appealed, assigning error upon the ruling of the trial court above set forth.

The matter is before us upon an agreed statement of the case (Rule of Supreme Court 10, 18 Wn. (2d) 11-a), including the written approval of the trial judge, who signed the order from which the state has appealed.

From the agreed statement, it appears that, after the paragraphs above quoted, the community property agreement continued by referring to Mr. and Mrs. Dunn's five living children, to whom distribution of seventy per cent of the total estate should be made, after the death of the survivor, when they, respectively, reached the age of thirty years. The remaining thirty per cent of the estate was to be held by the trustee named in the agreement until the death of the last surviving child, the income to be paid annually to the children, and, upon the death of the last survivor, the trust fund to be distributed to the grandchildren. Mr. and Mrs. Dunn each appointed the survivor as executor

". . . of this as a testamentary disposition of the property, if any such executor be necessary under circumstances that may hereafter arise, to act without bonds and to settle and administer this instrument, if necessary, without the intervention of the court."

Respondents here contend that, by the decree of distribution entered in Mrs. Dunn's estate, "the entire community property was distributed to the surviving husband for life with powers and rights set forth in the agreement," and that, upon his death, any balance was to be distributed to the children and trustee, all of the five children having reached the age of thirty years prior to the entry of the decree of distribution.

Appellant, on the other hand, contends that, upon Mr. Dunn's death, and not before, an inheritance tax became due upon the passing of his entire estate, including his share of

the community property previously belonging to Mr. and Mrs. Dunn, and that the trial court erred in declaring that all "State inheritance taxes . . . had been fully paid."

In the order appealed from, the trial court found that the community property agreement, upon Mrs. Dunn's death, became immediately effective as her last will and testament, "and as such made a full and complete disposition of the entire community property owned" by Mr. and Mrs. Dunn, and that the agreement "devised all of said community property" to Mr. Dunn for life, with powers of use, and so forth, "with remainder over upon his death" to the children and to the trustee.

The trial court further found that the "remainders" became immediately vested at the time of Mrs. Dunn's death; that all inheritance taxes thereon had been fully paid, and that all of the community property had then been distributed to Mr. Dunn for life, with remainders over to the children and to the trustee.

The court then found that none of the community property of the parties passed upon Mr. Dunn's death, but that title to all of such property "had passed under and by virtue of the testamentary agreement and the Will" of Mrs. Dunn, and that none of the residue of the community estate was taxable in Mr. Dunn's estate.

The trial court then, by order and decree, overruled the findings of the supervisor, and decreed that the amount already paid by the executors of Mr. Dunn's will constituted full and complete payment of all inheritance taxes due to the state of Washington from the estate, and that the executors were entitled to receive a receipt in full for such taxes.

Rem. Rev. Stat., § 6894 (Code of 1881, chapter 183, entitled "Property Rights of Married Persons," § 2416, p. 415), reads:

"Nothing contained in any of the provisions of this chapter, or in any law of this state, shall prevent the husband and wife from jointly entering into any agreement concerning the status or disposition of the whole or any portion of the community property, then owned by them or afterward to

be acquired, to take effect upon the death of either. But such agreement may be made at any time by the husband and wife by the execution of an instrument in writing under their hands and seals, and to be witnessed, acknowledged, and certified in the same manner as deeds to real estate are required to be, under the laws of the state, and the same may at any time thereafter be altered or amended in the same manner: Provided, however, that such agreement shall not derogate from the rights of creditors, nor be construed to curtail the powers of the superior court to set aside or cancel such agreement for fraud, or under some other recognized head of equity jurisdiction, at the suit of either party."

Rem. Rev. Stat., § 6898 [P.P.C. § 434-41] (Code of 1881, chapter 183, § 2417, p. 416), reads:

"The rule of common law that statutes in derogation thereof are to be strictly construed has no application to this chapter. This chapter establishes the law of the state respecting the subject to which it relates, and its provisions and all proceedings under it shall be liberally construed with a view to effect its object."

The sections above quoted were first enacted by the legislature as §§ 29 and 30, respectively, of "AN ACT Relating to and defining the property rights of husband and wife," included in the Territorial Laws of 1879, p. 77, and were later re-enacted, as above set forth, as portions of the Code of 1881, chapter 183.

Rem. Rev. Stat., § 6894, has several times been referred to and construed in our decisions.

In the case of *McKnight v. McDonald,* 34 Wash. 98, 74 Pac. 1060, it appeared that, December 30, 1886, James and Eliza Burke, husband and wife, entered into an agreement, drawn pursuant to Rem. Rev. Stat., § 6894, providing that, upon the death of either spouse, the property described in the agreement, " 'together with any other property by them hereafter acquired,' " should at once vest in the survivor. The contract was witnessed, and acknowledged before a notary public, in accordance with the statute, and was duly filed for record in the office of the auditor of the appropriate county.

After Mr. Burke's death, his widow sold the property by warranty deed. Later, the plaintiffs, children of the contracting parties, brought suit to recover an undivided one-half interest in the property, contending that the agreement was, in fact, a will, and that, since it was never probated and as it did not conform to the statutory requirements for a will, Mrs. Burke's deed conveyed only her undivided one-half interest in the real estate. It was also argued that the statute referred to was invalid, for several other assigned reasons.

The court held that the agreement was valid and accomplished the purpose for which it was executed, and affirmed the judgment of the lower court dismissing the action.

In *Bartlett v. Bartlett,* 183 Wash. 278, 48 P. (2d) 560, it appeared that a husband and wife had entered into an agreement, the first portion of which conformed with Rem. Rev. Stat., § 6894, the agreement containing a supplementary paragraph, evidently added after the document had been prepared, although not signed, to the effect that all property remaining in the possession of the survivor of the parties should, at the time of his or her death, be equally divided among their surviving children. The instrument was signed in the presence of one witness and was acknowledged, in accordance with the statute. It appeared that Mr. and Mrs. Bartlett had no children, although each of them had children by former marriages.

The husband died May 17, 1930, and his estate was, thereafter, duly probated. His wife died three years later, leaving a will with a codicil attached thereto, whereby she devised some property to her stepchildren and the remainder of her estate to her own children. Mr. Bartlett's children brought suit, seeking to enforce the last paragraph of the community property agreement between Mr. and Mrs. Bartlett, and appealed from an order dismissing their action. The judgment appealed from was affirmed, the court holding that the paragraph referred to was of no force or effect. In the course of the opinion, we said:

"The parties having availed themselves of the right conferred by statute to vest title in fee simple upon the death of

*either* of them, they could not subvert the purpose and effect of their agreement by suspending the vesting of title to a part or all of the property until after the death of *both* of them."

The court continued by holding that the agreement was not a will, not complying with "the formalities of a will as prescribed by the pertinent statute," nor was it a contract to make a will. The court stated that:

"Such agreements are twofold in nature, contractual and testamentary. The statute with reference to such agreements permits the husband and wife to contract as to how their community property shall be disposed of and also provides the specific point of time at which such agreement respecting status and disposition shall take effect."

In the case cited, the agreement was not offered for probate as Mr. Bartlett's will, and, even if otherwise sufficient to constitute his will, could not have been admitted to probate as such, having been attested by only one witness.

In the case of *Reagh v. Dickey,* 183 Wash. 564, 48 P. (2d) 941, Rem. Rev. Stat., § 6894, was again considered, and the court noted that the statute referred to is *sui generis,* no other state having enacted a similar law.

In the case of *Cummings v. Sherman,* 16 Wn. (2d) 88, 132 P. (2d) 998, it appeared that Homer J. and Phoebe Shinn, husband and wife, April 30, 1931, made mutual and reciprocal wills, disposing of their community property, each will providing for the payment of certain identical legacies. Mr. Shinn died July 9, 1931. His widow offered his will for probate and was appointed executrix thereof, the residue of the estate having been distributed to her March 27, 1936. Prior to this date, Mrs. Shinn executed another will, which, upon her death October 23, 1940, was admitted to probate. In an action instituted by a person named as a beneficiary under the mutual wills, it was held that the mutual wills made by Mr. and Mrs. Shinn constituted a binding contract between them. On appeal to this court by the executrix of Mrs. Shinn's will, the judgment of the trial court was affirmed.

It may be noted that, in the case at bar, the agreement executed by Mr. and Mrs. Dunn was, after Mrs. Dunn's death, offered for probate by Mr. Dunn as her will and was, by the superior court, admitted to probate as such, being described in the decree of distribution of her estate as her "Last Will and Testament and Joint Survivorship Agreement." It does not appear, from the record before us, that any person objected to the admission of the document to probate as Mrs. Dunn's will, or to any of the proceedings had in her estate.

In *In re Brown's Estate,* 29 Wn. (2d) 20, 185 P. (2d) 125, this court, in reversing an order of the superior court, upheld a community property agreement between husband and wife, made in accordance with Rem. Rev. Stat., § 6894, stating that, in the case before the court, the contract between the parties was not a will, "but is a special contract for which provision is made by the statute."

Agreements between husband and wife, prepared in accordance with Rem. Rev. Stat., § 6894, have been referred to by this court in the cases of *Board of Trade v. Hayden,* 4 Wash. 263, 30 Pac. 87, 32 Pac. 224, 31 Am. St. 919, 16 L. R. A. 530, and *Bloor v. Bloor,* 105 Wash. 110, 177 Pac. 722.

The agreement between Mr. and Mrs. Dunn contains the elements of a will, as well as those of a contract entered into pursuant to Rem. Rev. Stat., § 6894. It was executed with the formalities required both for the execution of such an agreement and of a will, and, doubtless, was entered into by Mr. and Mrs. Dunn with *animus testandi.*

After Mrs. Dunn's death, the document was offered by Mr. Dunn to the appropriate superior court for probate as Mrs. Dunn's will, and was formally admitted to probate as such.

As above set forth, by the decree of distribution entered in Mrs. Dunn's estate, the trial court named, as the distributees in the will, Mr. Dunn, the surviving spouse, and the children and grandchildren of Mr. and Mrs. Dunn, and found that it was the intent and purpose of the agreement that the survivor should have all of the community property covered by the will and agreement, with the right to use,

own, dispose of, and so forth, such property during the survivor's life; that any residue of the property included in the estate, together with the survivor's one half thereof, remaining at the death of the survivor, should be distributed, after such death, in accordance with the provisions of the agreement, and, finally, "that pursuant to the foregoing, the property of said estate be, and the same hereby is distributed to Arthur G. Dunn, the surviving spouse of said deceased," and so forth.

It may be noted that the "property of said estate," as inventoried by Mr. Dunn, consisted of Mrs. Dunn's community one half thereof. Mr. Dunn's final account and petition for distribution are not part of the record before us.

Pursuant to the agreement, considered as the will of Mrs. Dunn, Mr. Dunn received, as distributee of her estate, her share of the community property, with the right to dispose thereof during his lifetime, and certainly enjoyed this right, whether, as contended by respondents, pursuant to the agreement considered as a will or by the terms of the agreement considered as a contract.

Of course, by the agreement, upon Mrs. Dunn's death, Mr. Dunn was precluded from disposing, by any subsequent will, of any of the former community property of the parties. This he did not attempt to do.

In 1 Woerner American Law of Administration (3d ed.) 75, § 37, is found the following:

"The will of a husband and wife, though joint in form, is not a joint will, if the property devised belongs to the husband or wife only; and where such a will is contingent, it is void if the contingency does not happen. But where husband and wife had joint power to devise, and had executed it by joint will, neither of them can revoke the joint will so made by a separate will. Speaking of mutual or reciprocal wills between husband and wife, the Supreme Court of Washington says: 'our community property statutes not only invite, but almost compel, such dispositions of property, and the execution of such instruments has come to be so common that we feel bound to take judicial notice of the custom, and to sustain them if possible.' [Referring to *Prince v. Prince,* 64 Wash. 552, 117 Pac. 255.]"

The principle enunciated in the text above quoted is supported by the case of *Cummings v. Sherman, supra.*

█ In accordance with the authorities, it may be stated that: (1) an agreement entered into by a husband and wife, pursuant to Rem. Rev. Stat., § 6894, is a contract *sui generis*; (2) the mere fact that such an agreement becomes, as to community property disposed of thereby, effective at the death of either spouse, does not, of itself, render the agreement a will or subject to the rules applicable to the construction of wills, and (3) if, however, such an agreement be, by its express terms, both a contract and the will of each of the parties thereto, and if, upon the death of one of the spouses, the instrument is, by a court of competent jurisdiction, admitted to probate and declared to be the last will and testament of the deceased spouse, the will should be held to have been executed as part of the contract and should be construed according to the rules applicable to mutual wills. The fact that the instrument purports to be both a community property agreement and wills, does not alter its effect as the former.

In the case at bar, the question of whether or not the agreement constituted, in fact, the joint wills of Mr. and Mrs. Dunn is not before us for determination, and we express no opinion upon that question. Of course, the instrument could not be established as Mr. Dunn's *will* during his lifetime, although he might be declared to be bound thereby. Upon the record before us, pursuant to the document admitted to probate as Mrs. Dunn's will, Mr. Dunn acquired a life estate in Mrs. Dunn's portion of the community property, and the children of the parties acquired a vested remainder thereto, subject, of course, to Mr. Dunn's right to use and dispose of the property during his lifetime.

By the terms of the community property agreement, considered merely as such, Mr. and Mrs. Dunn agreed that all of the property which they then owned, or should acquire thereafter during the existence of the community, was and should be their community property; that, upon the death of either, the survivor should possess all of the community

property then in existence, with the right to dispose of the same during his or her lifetime, and that, upon the death of the survivor, the property then remaining should go to the trustee for the children, or to those of the children who were then competent, under the agreement, to take title thereto.

Upon the death of Mr. Dunn, his estate consisted of, first, the remaining portion of his half of the community estate of Mrs. Dunn and himself; second, his life estate in what remained of Mrs. Dunn's half of the community property, and, third, the property which he had acquired after Mrs. Dunn's death.

Upon his death, all of his interest in the former community property of Mrs. Dunn and himself vested in the beneficiaries named in the community agreement and according to the terms thereof, a moiety of this property under the agreement which had been probated as Mrs. Dunn's will, and his moiety thereof, pursuant to the community property agreement, as a portion of his estate, and not pursuant to the decree of distribution entered in Mrs. Dunn's estate. His separate property, of course, passed to the beneficiaries under his will.

While the agreement was, in form, Mr. Dunn's will, it could not become effective *as his will* until his death, although his right to dispose of his property by will, after Mrs. Dunn's death, was limited by the provisions of the agreement.

Appellant cites *National Bank of Commerce of Seattle v. Dunn,* 194 Wash. 472, 78 P. (2d) 535. The facts in the case cited concern, to some extent, Mr. Dunn's business activities after Mrs. Dunn's death, and reference was made to Mrs. Dunn's estate. The case, however, has no bearing upon the questions here presented.

Respondents argue that title to Mr. Dunn's half of the community property passed pursuant to the community agreement, when it was admitted to probate as Mrs. Dunn's will. It is true that, upon Mrs. Dunn's death, the agreement became fixed and binding upon Mr. Dunn as to the property covered thereby, but this effect was produced not by the

document as Mrs. Dunn's will, but by its character as a community property agreement and as the *mutual* will of the parties.

It may be contended that appellant conceded that, upon Mrs. Dunn's death and the probate of her will, Mr. Dunn's share of the community property became a life estate, with a then vested remainder in the children. Whether or not such a concession was made is unimportant, and, of course, this court is nowise bound thereby, the question being one of law to be determined from admitted facts.

The present status of the community agreement as Mr. Dunn's will should not be here considered, as the instrument was never offered for probate as his will.

The fact that Mr. and Mrs. Dunn combined their community property agreement and their wills in one instrument adds nothing to the effect of that document as their wills. The situation is no different than it would have been had they made mutual wills, by way of separate instruments, referring to the community property agreement.

■ Respondents invoke the doctrine of waiver, arguing that the entire community estate was, by Mr. Dunn, as executor of Mrs. Dunn's will, brought before the probate court. Of course, in every administration upon community property, the entire estate is brought before the court for ascertainment and payment of community debts and for the determination of any other questions which may properly arise, but nothing in the record before us indicates any intent on the part of Mr. Dunn to submit his share of the community property for distribution, in any sense other than as a community estate is always brought before the court. In this connection, it may be again noted that, in filing his inventory of the property of the estate, Mr. Dunn was careful to segregate Mrs. Dunn's community half of the property as passing by her will and, hence, liable to the payment of an inheritance tax. *In re Corbin's Estate*, 107 Wash. 424, 181 Pac. 910, 7 A. L. R. 685; *Inheritance Tax Division v. Chamberlin Estate*, 21 Wn. (2d) 790, 153 P. (2d) 305, 156 A. L. R. 552.

In the decree of distribution entered by the superior court in Mrs. Dunn's estate, the court doubtless correctly construed the community property agreement (no one here contends otherwise), and, by paragraph No. 4 thereof, *supra*, declared that any residue of Mrs. Dunn's estate, together with the survivor's half of the community property remaining unused, "*shall* be distributed on the death of said surviving spouse in accordance with the provisions of Paragraph Fourth of said Will and Agreement." (Italics ours.) The word "shall" refers to some future distribution.

The superior court did not purport, by the decree of distribution, to distribute any property save that pertaining to Mrs. Dunn's estate, as appears from paragraph No. 5 of the decree, that paragraph stating that, upon the death of Mr. Dunn, any undisposed of property "included in said estate be thereupon distributed," and so forth. The words "said estate" refer to the estate of Mrs. Dunn.

We find nothing in the decree of distribution entered in Mrs. Dunn's estate which affords any basis for a holding that that decree purported to distribute more than Mrs. Dunn's share of the community property.

Respondents cite the case of *Commissioner of Internal Revenue v. Masterson,* 127 F. (2d) 252, a case involving an agreement, which was also a joint will, executed by a husband and wife, residents of the state of Texas. In that state, there was no statute similar to Rem. Rev. Stat., § 6894. The facts before the court in the case cited were complicated, and we find nothing in the decision which renders the case of controlling importance here.

The opinion in the case of *In re Ellis' Estate,* 169 Wash. 581, 14 P. (2d) 37, 86 A. L. R. 734, has some bearing upon the question of the time when the trust terminates and title to the property passes. It was held that such title does not pass until the death of the person who established the trust.

Respondents rely upon an opinion of this court, *In re Gochnour's Estate,* 192 Wash. 92, 72 P. (2d) 1027. By her will, Mrs. Gochnour devised all of her property to her husband during his natural life, with full power of aliena-

tion; after his death, title to the property to vest in her named relatives. The state contended that, on the death of the testatrix, both the life estate and the vested remainders were subject to the payment of an inheritance tax, and this court apparently upheld that contention but affirmed the order of the superior court denying the state's claim that an inheritance tax was due, upon the ground that the property passing by the wife's will to the surviving husband was, by law, exempt, amounting to less than ten thousand dollars in value.

In the case of *In re Bolstad's Estate,* 200 Wash. 30, 93 P. (2d) 726, it appeared that property had been bequeathed to a relative, with power to exhaust the estate, with remainder at his death to persons named in the will. The questions presented concerned inheritance taxes to be collected upon the property bequeathed to the beneficiary under the will and the remaindermen named by the testatrix.

The situation presented by the facts in the case at bar is essentially different from the facts in the cases above cited. Upon Mrs. Dunn's death, and the probate of her will and distribution of her estate, Mr. Dunn became possessed of a life estate in Mrs. Dunn's share of the community property, with a vested remainder to their children. Mr. Dunn still owned his half of the community property, subject to the provisions of the community property agreement, and, of course, without power to make any different testamentary disposition of his share thereof by a new will. During his lifetime, he was in full possession of his own property, with the right to enjoy and dispose of the same at his pleasure. Mr. Dunn's ownership of his property may not be correctly denominated a life estate.

The share of the community property which Mr. Dunn owned, after Mrs. Dunn's death and the probate of her estate, was an estate which he himself had created by his own act in signing the community property agreement, that agreement having been fixed beyond possibility of change, on his part, by Mrs. Dunn's death. It was not a life estate with remaindermen, which is generally considered as an estate created by a grant or will of another party. Whether

or not the distinction be without a difference, is unimportant. There is here no dispute concerning the ultimate destination of Mr. Dunn's estate.

Appellant and respondents both rely, to some extent, upon the opinion of this court in *In re Ivy's Estate*, 4 Wn. (2d) 1, 101 P. (2d) 1074. It appeared that Mr. and Mrs. Ivy, October 27, 1936, placed their community estate in trust with a third party, reserving the net income to the trustors, with the right to so much of the corpus of the trust estate as they saw fit to withdraw. Upon the death of either trustor, the survivor succeeded to all the rights and privileges under the trust agreement and became the sole beneficiary thereof. Upon the death of the survivor, the trust estate was to be distributed to named beneficiaries. The trustors, or the survivor, had the right, with the approval of the trustee, to amend or revoke the trust agreement.

January 27, 1937, Mr. Ivy died testate, and, after several bequests, the residue of the estate passed to the trustee, under the agreement referred to above. October 15, 1937, Mrs. Ivy, the surviving trustor, amended the trust by eliminating therefrom the named remaindermen and making herself the sole beneficiary of the trust.

The supervisor of the inheritance tax division made his findings, contending that, under the terms of the trust agreement, Mrs. Ivy took, as of the date of Mr. Ivy's death, a life estate with the right to invade the principal, with a vested remainder over to the beneficiaries of the trust agreement, and that the inheritance tax should be computed upon that basis, notwithstanding the fact that the surviving trustor had eliminated the remaindermen after her husband's death.

It was contended, on behalf of the estate, that title to all the property in trust had vested in the trustee; that, after Mr. Ivy's death, his widow was the sole beneficiary of the trust, and that the remaindermen then had a contingent remainder which was extinguished by Mrs. Ivy's subsequent act in eliminating the remaindermen as beneficiaries under the trust agreement.

We held that the tax should be computed as of the date of Mr. Ivy's death, and that the interest created must be con-

sidered as of that date; Mrs. Ivy's subsequent act in amending the trust agreement not altering the situation, her act having no retroactive effect in so far as the vested right of the state to payment of an inheritance tax was concerned.

The rule that such remainders as were created by the trust agreement are vested remainders and not contingent, at least in so far as the payment of inheritance taxes is concerned, was affirmed.

In the case cited, the trust agreement was not a community property agreement between husband and wife, entered into pursuant to Rem. Rev. Stat., § 6894, and the facts in the case cited were basically different from the facts in the case at bar, save in so far as the decision has some bearing upon the status of the remaindermen under Mr. and Mrs. Dunn's community property agreement, with which question we are not now concerned.

It is, of course, admitted that, during the course of administration of Mrs. Dunn's estate, an inheritance tax was paid, computed only upon her half of the community property. It is not contended that full disclosure concerning the entire situation was not made to the inheritance tax division.

For the reasons above stated, we hold that the supervisor correctly collected the amount of the inheritance tax due on the passing of title to Mrs. Dunn's property through her estate, and that, in the course of administration of Mr. Dunn's estate, an inheritance tax is due upon the passing of title to property which Mr. Dunn owned as his share of the community property of Mrs. Dunn and himself, title to which passed upon his death.

The order appealed from is reversed, and the cause remanded to the superior court, with instructions to proceed in accordance with the views herein expressed.

MALLERY, C. J., STEINERT, ROBINSON, and JEFFERS, JJ., concur.

December 23, 1948. Petition for rehearing denied.