[No. 35120.    Department One.    April 14, 1960.]

EDWIN R. MONROE, *Appellant,* v. LEWIS J. FETZER *et al., Respondents.*[1]

[1]Reported in 350 P. (2d) 1012.

*Sullivan & Offenbacker* and *Brumbach & Hennessy*, for appellant.

*Chavelle, Millard & Springer,* for respondents.

HUNTER, J.—This appeal arises from an action for an accounting and judgment for commissions alleged due under a contract.

Plaintiff Edwin R. Monroe resides in the area of Los Angeles, California. Defendants Lewis J. Fetzer and wife are manufacturer's representatives, doing business as the Lewis J. Fetzer Company, in Seattle, Washington. On or prior to March 1955, plaintiff Monroe entered into an oral agreement with the defendants whereby the plaintiff was to obtain for Fetzer the account of the Air Products Company, an aircraft parts manufacturer in California. The account was obtained by the plaintiff and the agreement was reduced to writing on March 30, 1955, as follows:

"Mr. E. R. Monroe
 9401 11th Ave.
 Inglewood, California.
"Subject: Sales Contract
"This letter will serve as a working agreement between you and the writer, owner of the Lewis J. Fetzer Co. Conditions of this agreement are as follows:
"1. Mr. E. R. Monroe will coordinate, through the writer, the activities of the Air Products Company account.
"2. Your compensation will be 50% of the commission received each month on the gross sales relative to the Air Products Company account.
"3. Conditions of agreement on future accounts obtained by you will be supplemented by separate written agreements.
"4. All expenses occurred [*sic*] by either party entered into this agreement will be the respective individuals responsibilities and not the others.
"5. This agreement will be effective for the life of the Air Products Company contract. After termination, the Lewis J. Fetzer Company will continue to pay you your specified commissions on specified purchase orders and quantities in existence at the date of termination until such specific purchase orders and quantities have been completed.

"Please sign and return the duplicate copy of this letter as your acceptance of this contract.

> "Very truly yours,
> LEWIS J. FETZER CO.
> /s/ Lewis J. Fetzer
> Lewis J. Fetzer"

"We agree to the above:
 /s/ By Edwin R. Monroe
 Date 4-1-55"

Fifty per cent of the commissions earned from the Air Products Company account were paid to the plaintiff until July of 1956. At the time the last check was delivered, the defendant informed the plaintiff that unless he quit his job and devoted his full time to the co-ordination work connected with the Air Products Company account, the defendant would have to hire someone to perform this work. Whereupon plaintiff stated he was no longer interested in the contract.

The defendant thereafter employed a secretary, installed a teletype machine, and hired one Yeager for the purpose of co-ordinating accounts. Sixty per cent of the expense and seventy-five per cent of their time were devoted to handling the Air Products account. Yeager made eight trips to the Air Products Company plant in California, during the period for which the accounting of commissions is sought. No services were ever performed by the plaintiff in connection with the co-ordination work on the Air Products account.

The trial court, finding the contract had been mutually abandoned or canceled, entered judgment for the defendants and dismissed the plaintiff's complaint with prejudice. Plaintiff appeals.

The appellant contends the evidence preponderates against the above finding of the trial court.

The record discloses the following testimony of respondent Lewis J. Fetzer, relating to a conversation between himself and the appellant:

" . . . Q. The last commission was paid, I think, in June or July of 1956. Did you have any discussion with him in relation to that last payment? A. Yes. I believe he was up here at that time when I gave him that check.

In fact, I believe all the checks I gave him is when we saw each other, either Los Angeles or here. At that time the volume of business was picking up, which I have shown on a graph there, to the extent that I told Ed that if he don't quit his job then I am going to have to hire somebody. He told me then that he was making $1500 a month plus commission from South Gate Casting and he was no longer interested in it. . . . THE COURT: When did that conversation take place? Was that at the time you delivered the last check? THE WITNESS: Yes. Yes. . . . A. The reason I paid him was because he led me to believe, and assured me that he would eventually quit his job and set up his own business down there whereby he could take care of this co-ordination work connected with Air Products. . . ."

█ The trial court was entitled to believe this testimony, and could further find from the evidence that the appellant did none of the co-ordinating pursuant to the contract, and that the respondent had to provide for the co-ordination work to be done by persons other than the appellant. The finding of the trial court that the parties mutually abandoned the contract is supported by substantial evidence, and is in harmony with the rule that a contract will be treated as abandoned where the acts of one party inconsistent with its existence are acquiesced in by the other. *Ferris v. Blumhardt*, 48 Wn. (2d) 395, 293 P. (2d) 935 (1956); *Wiegardt v. Becken*, 21 Wn. (2d) 59, 149 P. (2d) 929 (1944).

█ The appellant argues that a request for performance by respondent Fetzer was a condition precedent to any performance by the appellant and, since the respondent made no such request, his failure to perform was not inconsistent with the contract, and there was, therefore, no abandonment.

We are satisfied that the conversation between the appellant and the respondent constituted a request for performance. However, if we assume it was not, the statements of the appellant in the conversation were still sufficient to justify a conclusion that a request for such

performance would have been a useless act, and therefore unnecessary.

It being determined that the contract was mutually abandoned, the respondent had no duty thereafter, to pay appellant fifty per cent of the commissions received, whatever may have been contemplated by the contract during its existence. Since the sums in dispute are only those received by the respondent subsequent to the abandonment of the contract, we need not consider the remaining assignments of error.

The judgment entered by the trial court is affirmed.

WEAVER, C. J., MALLERY, HILL, and DONWORTH, JJ., concur.