Jonnie Belle HOPSON, Adm'x of the Estate of Elizabeth Winlock, et al., Appellants,

v.

Sadie Rose EWING et al., Appellees.

Court of Appeals of Kentucky.

June 16, 1961.

Rehearing Denied Feb. 16, 1962.

Willie C. Fleming, Charles W. Anderson, Jr., Louisville, for appellants.

John C. Fogle, Boehl, Stopher, Graves & Deindoerfer, W. W. Evans, Louisville, for appellees.

PALMORE, Judge.

Following the death of Ike Weathers in July of 1957 the Jefferson County Court admitted to probate as his will the instrument hereinafter copied in full. A contest in the circuit court resulted in a directed verdict for the proponents. The contestants appeal on two main grounds, (1) that the instrument is insufficient in form and substance to constitute a will and (2) that it was not proved to have been executed in accordance with KRS 394.040.

Except for the signatures and date at the foot the document in question was written by typewriter. It reads as follows:

"Sadie Rose, Mary Rose and Joe Ellis
443 South 7th Street
1124 South 8th Street
3208–3210 Southern Avenue
(2) Lots—3608–3610 Grand Avenue
City Truck—Jewelry—Bank Account—(1) Three Karat Diamond Ring.

Alonzo Dorsey—
524 South Ninth Street

Mary C. Duncan
All contents at 3606 Grand Avenue and 1120 South 36th Street
My home and everything.

She shall take care of George Smith as long as he lives.

/s/ Preston O. Davis
/s/ Thomas Manier
/s/ Ike Weathers

Nov. 20–1951"

■ "Of all instruments a will is least governed by form, the form being unimportant, except as indicating intent." Dixon v. Dameron's Adm'r, 1934, 256 Ky. 722, 77 S.W.2d 6, 7; 57 Am.Jur. 51 (Wills, § 20). "The absence of dispositive words such as 'give,' 'devise,' or 'bequeath' does not necessarily stamp an instrument as non-testamentary." Id., p. 54, § 21. We have no difficulty in concluding that the paper before us in this case was intended as a will and was sufficient in form and substance for that purpose.

■ Our conclusion is supported by the evidence. The items of property listed on the instrument actually were owned by Weathers at the time of its execution. Davis, one of the attesting witnesses, testified that Weathers had told him beforehand he wanted him to witness his will. Manier, the other witness, said that while he and Davis were accompanying Weathers on the way to the place where the paper was executed he asked what was the purpose at hand and Davis, in the presence of Weathers, answered, "Ike's going to make a will." Where a nondescript instrument not in the usual form of a will is of ambiguous import on its face, extrinsic evidence is admissible to establish testamentary intent. 57 Am. Jur. 581 (Wills, § 874); Boggess v. McGaughey, 1948, 306 Ky. 319, 207 S.W.2d 766; Nelson v. Nelson, 1930, 235 Ky. 189, 30 S.W.2d 893, 896; 1 Bowe-Parker: Page on Wills, § 5.16, p. 204. See also annotation at 21 A.L.R.2d 319, 324.

The case of Harlan v. Anderson's Ex'r, 1937, 267 Ky. 779, 103 S.W.2d 310, cited by appellants, is not in point for the principal reason that it was a suit to *construe* the disputed document, the *probate* of which

had already been accomplished and was not in controversy. The instant litigation does not involve construction of the will.

*Now as to the matter of execution.* Weathers apparently was a man of little education, but of distinct commercial acumen, who had accumulated his estate from the bail bond business, the operation of a dump truck around the city hall in Louisville, and various other trading activities. He had the will prepared by some friend or lay empiricist in the city clerk's office. He arranged with his old friends "Red Mike" Manier and "Fats" Davis to meet in the vicinity of the city hall at an appointed time. They all went to a big office with a long desk where a man handed him some papers. Then and there, in the presence of each other, they all signed. Both witnesses identified the will in question as the paper they signed. From the arrangement of the signatures it would appear, and the shifting testimony of the two witnesses indicated, that the testator signed last. He did not at any time on that occasion or thereafter refer to the instrument as a will, nor did he so acknowledge it by any manifestation beyond what we have recited here.

■ We do not have here a question of acknowledgment. KRS 394.040 requires that a non-holographic will be signed *or* acknowledged in the presence of the witnesses. Since Weathers signed the will in the presence of Manier and Davis, whether he acknowledged it is immaterial. Bennett v. Craycraft, Ky.1956, 290 S.W.2d 615; Darnaby v. Halley's Ex'r, 1948, 306 Ky. 697, 208 S.W.2d 299 (in which case the statute was held satisfied by subscription before one witness and separate later acknowledgment before another).

■■ Where the testator subscribes the will in the presence of the witnesses there is no requirement relating to the order in which the signatures are affixed, so long as each attesting signature is made in the testator's presence. See the leading case of

Swift v. Wiley, 1840, 1 B.Mon. 114, 40 Ky. 114 (where two of three witnesses, though present when the testator signed the will, had affixed their own signatures some hours before); and Sechrest v. Edwards, 1862, 4 Metc. 163, 61 Ky. 163. Even in the case of acknowledgment, vis-à-vis subscription, where it may be argued with some force that there is no will to be acknowledged until the testator has signed, it has been held that if the whole transaction is substantially contemporaneous the order of precedence is of no moment. Robertson v. Robertson, 1930, 232 Ky. 572, 24 S.W.2d 282. See also annotations at 39 A.L.R. 933 and 57 A.L.R. 833. So in this case nothing can be made of the point that one or both witnesses signed ahead of the testator.

The appellants raise further questions of a technical nature. In a pretrial deposition Preston O. "Fats" Davis evidently had given testimony indicating that he and Weathers signed before the arrival of Manier, the other witness. At the trial the propounders proved the execution of the will by the testimony of Manier alone. Davis was put on the stand by the contestants. He disappointed them by corroborating the evidence given by Manier except as to the time of day when the transaction took place. Without objection counsel for the contestants proceeded to question him concerning the contradictory statements made in the deposition. But the witness was nimble as an eel, and held fast to his later testimony. In fact, we are not satisfied after a study of the transcript that he ever really admitted that he had made the statements read from the deposition, and if he did so he nevertheless did a good job of explaining the discrepancies away. But anyway, counsel for the proponents did not ask the court to admonish the jury as to the effect of the contradictory statements, and the contestants now contend that they should have been taken as substantive testimony creating a conflict in the evidence and precluding a directed verdict.

We agree with the position taken by the learned trial judge. It is difficult to see under what rational theory testimony that the law specifically limits to such minimizing influence as it may have on the credibility of the witness could be treated as having probative force. Among other reasons, the very fact that the witness declines to ratify it on the witness stand destroys, whatever weight it might otherwise possess. Its greatest possible consequence could be to erase the force of the witness' later testimony at the trial, and if we apply that theory to this case we are left with all the evidence still on one side. True, the burden of showing proper execution of the will was on the propounders, Poindexter's Adm'r v. Alexander, 1939, 277 Ky. 147, 125 S.W.2d 981; Speshiots v. Coclanes, 1949, 311 Ky. 547, 224 S.W.2d 653, but the proof laid down by them in this case was such that reasonable men could arrive at but one conclusion. Hence the peremptory was in order.

Judgment affirmed.