[No. 1194-1.    Division One—Panel 1.    December 4, 1972.]

*In the Matter of the Estate of* RALPH W. LYMAN, *Deceased.*

WAYNE E. LYMAN, *Appellant,* v. JANNIE M. LYMAN, *Respondent and Cross-appellant.*

*John L. Vogel,* for appellant.

*Bruce E. Durocher,* for respondent and cross-appellant.

HOROWITZ, C.J.—This appeal is concerned principally with the validity of a will of community property which disposes of that property in a manner contrary to the provisions of an earlier executed community property agreement under RCW 26.16.120.

Ralph W. Lyman and Jannie M. Lyman were married on February 14, 1959. On January 6, 1964, the Lymans executed an "Agreement as to Status of Community Property" under RCW 26.16.120. At the same time, they each executed a will leaving their respective property to the other. These wills are not here involved.

On September 11, 1970, after two prior separations, Jannie M. Lyman commenced a divorce suit in King County, Washington, praying for a divorce from Ralph W. Lyman and an equitable division of their community property. She obtained a temporary restraining order, followed by a temporary injunction, enjoining her husband from "selling, assigning or encumbering" any of the community property of the parties pending entry of the divorce decree.

On September 18, 1970, while the restraining order was in effect and without his wife's knowledge, Ralph W. Lyman executed a new nonintervention will naming his wife Jannie as executrix to serve without bond, but bequeathed his half community interest in the property of the parties to his stepsons, Wayne E. Lyman and Gary L. Lyman, the children of Jannie M. Lyman's prior marriage. Ralph W. Lyman died on September 28, 1970.

On October 9, 1970, because of her husband's death, Jannie M. Lyman dismissed her divorce suit. She then recorded the January 6, 1964 community property agreement with the King County Auditor. She made no effort to probate her husband's will of September 18, 1970.

On November 13, 1970, appellant Wayne E. Lyman, named a beneficiary in decedent's will, petitioned for the admission of the September 18, 1970 will to probate and prayed that letters of administration with will annexed

be issued to him. Decedent's surviving spouse filed objections to the petition on the ground that the community property agreement prevailed over the disposition made by the will and, in any case, that the deceased was not of sound and disposing mind and memory when he executed the will. At trial she further contended the will was improperly executed. Alternatively, she asked to be appointed executrix as provided in the will.

On June 3, 1971, the court, over Jannie Lyman's objections, admitted to probate the decedent's will of September 18, 1970; decreed that the community property survivorship agreement of January 6, 1964 was valid and prevailed over the will; confirmed Jannie M. Lyman as executrix of the will and decreed that the executrix was entitled to obtain an order in probate dismissing the probate proceedings upon filing a petition showing (1) that there was no property on which to administer because of the community property agreement, (2) that a report had been made to the Washington State Inheritance Tax Division for the determination of inheritance taxes without probate, and (3) that the estate would be administered pursuant to the community property agreement.

On June 14, 1971, the executrix petitioned for an order dismissing the probate proceedings, the petition containing the allegations required by the June 3, 1971 decree. On June 17, 1971, after a hearing, the court entered findings, conclusions, and an order approving the acts of the executrix and dismissed the proceedings in probate.

Wayne E. Lyman appeals from the decree entered below. Jannie M. Lyman cross-appeals.

Neither party assigns error to any finding. Instead, the assignments of error are directed to certain conclusions and the decree based thereon. Wayne E. Lyman accepts the trial court's conclusion the "will was properly executed." He contends, however, the court erred in upholding the validity of the community property agreement of January 6, 1964; in decreeing that the agreement prevailed over decedent's will with respect to the distribution of the com-

munity property; in confirming Jannie M. Lyman as executrix; and in providing for dismissal of the probate proceedings. Accordingly, he assigns error also to the entry of the decree of June 17, 1971 dismissing the probate proceedings and refusing to issue to him letters of administration with will annexed.

Jannie M. Lyman, by cross-appeal, assigns error to the court's conclusion of law and decree of June 3, 1971 based thereon that the will was properly executed and entitled to admission to probate. She no longer claims nor assigns error to the finding that when her husband executed the will of September 18, 1970 he was of sound and disposing mind and memory.

Upon consideration of the assignments of error of each party, we affirm the decree which is the subject both of appeal and cross-appeal.

Appellant Wayne E. Lyman's attack upon the validity of the community property agreement and the conclusion that it has priority over the September 18, 1970 will with respect to the distribution of community property at death, rests on his claim that the agreement became a nullity prior to decedent's death because it was mutually abandoned by the parties to the agreement. He contends Jannie M. Lyman initiated the abandonment by filing her divorce complaint and obtaining a restraining order against her husband. He then argues that when Ralph W. Lyman executed his September 18, 1970 will, leaving his half of the community property to his two stepsons rather than his wife, he in effect accepted his wife's abandonment of the agreement, thereby nullifying the agreement by mutual abandonment.

The community property agreement under RCW 26.16.120 is not a will; it is a contract *sui generis*. *In re Estate of Dunn*, 31 Wn.2d 512, 526, 197 P.2d 606 (1948). As in the case of any other contract, the parties are free to abandon it by mutually manifested intention clearly shown. Conduct manifesting an intention to abandon a contract is sufficient if the conduct of one party is inconsistent with

the continued existence of the contract and that conduct is known to and acquiesced in by the other. *Monroe v. Fetzer*, 56 Wn.2d 39, 350 P.2d 1012 (1960); *Ferris v. Blumhardt*, 48 Wn.2d 395, 293 P.2d 935 (1956). *See also In re Estate of Wittman*, 58 Wn.2d 841, 365 P.2d 17 (1961); 5A A. Corbin, *Contracts* § 1236, at 542-44 (1964).

Whether the parties have mutually abandoned a contract between them depends on their mutual intention to effect such a result. As stated in *In re Estate of Wittman, supra*:

[A]ll parties to the contract must *assent* to its rescission and there must be a *meeting* of their minds.

58 Wn.2d at 844.

Uncommunicated subjective mutual intention to abandon is not enough. The intention of each party, to be legally operative, must be a manifested intention. In the absence of words, there must be conduct, or if there be both words and conduct, such words and conduct together must provide sufficient evidence from which a fair inference of their intention may be ascertained. Restatement of Contracts §§ 20, 21, 22 (1934).

Intention manifested in the manner described consists both of foresight of the consequences to follow from an act and a desire to do the thing foreseen. O. Holmes, *Common Law* 53 (1881), states it this way:

Intent again will be found to resolve itself into two things; foresight that certain consequences will follow from an act, and the wish for those consequences working as a motive which induces the act.

*See also* J. Salmond, *Jurisprudence* § 89, at 367-72 (12th ed. P. Fitzgerald 1966); G. Paton, *Jurisprudence* § 68, at 275 (3d ed. D. Derham 1964); R. Dias, *Jurisprudence* 287-93 (3d ed. 1970).

As later appears, the evidence is insufficient to show that Jannie M. Lyman, by filing the divorce complaint and obtaining a restraining order, either foresaw that such action constituted an intent to forthwith abandon the community property agreement, or that she wished such a consequence

to follow. Indeed, as later shown, her unchallenged evidence is to the contrary.

When the wife filed her divorce complaint and obtained a restraining order, she intended to invite the court, pending dismissal, further agreement with her husband, or termination of the proceedings, to adjudicate and regulate the property rights of the parties. By filing her complaint and obtaining a restraining order, she invited the court and not her husband to determine what her rights would be in and with respect to the community property.

The filing of a divorce complaint, whether or not accompanied by a restraining order, in itself does not serve to change, modify or abrogate the property rights of the parties otherwise existing. Thus, under RCW 26.16.030 (in effect when the divorce complaint in the instant case was filed),[1] the husband continued to possess the power to manage and control community property and to incur obligations notwithstanding divorce proceedings were commenced or pending. *See Benson v. District Court*, 57 Idaho 85, 62 P.2d 108 (1936). If the husband's power was to be curtailed, it was necessary to restrain or temporarily enjoin the husband from exercising his otherwise existing powers with respect to the property of the parties. RCW 26.08.090.

The court, in a pending divorce action, acquires jurisdiction to regulate, modify or abrogate the rights of the parties as between themselves by final decree. RCW 26.08.110. A community property agreement between husband and wife under RCW 26.16.120, fixing their rights upon death, creates contractual rights and such rights are a form of property. Under RCW 26.08.110, the court is expressly empowered to make "such disposition of the property of the parties, either community or separate, as shall appear just and equitable . . ." Accordingly, the court by decree can cancel the community property agreement; or, the court, by dividing the community property of the parties,

---

[1] The statutory modification of RCW 26.16.030 effected by Laws of 1972, 2d Ex. Sess., ch. 108, § 3, does not change the thrust of the argument made.

necessarily renders the community property agreement inoperable. The effect of a court-ordered property division of community property is to convert what was community property to the separate property of each spouse. In either case the intention to submit community property for court disposition by the divorce decree is not the same as an intention to immediately effect an ex parte abandonment of a valuable contractual right. The testimony shows that Jannie M. Lyman had no intention to presently abandon the community property agreement by filing her divorce proceeding. When asked by her late husband's attorney "Did you intend to abandon this . . . community property survivorship agreement when you commenced this divorce action?" she replied, "I did not."[2]

■ The execution by her husband of a will making a disposition of community property inconsistent with that made in the community property agreement does show an intention on his part to abandon that agreement. However, his intention was unilateral. Before his intention to abandon could be said to be mutual, it was necessary that the wife know that her husband had executed the September 18, 1970 will and its disposition of community property, and it was essential that she acquiesce therein. The court expressly found that the execution by her husband of the September 18, 1970 will was not only without the benefit of legal counsel, but it was also without "the knowledge of his

---

[2]She further testified:

"Q. But still you were asking that the community property be divided that's true, is it not?

"A. Yes, if the divorce went through. I started the divorce action, I would like to state, for this fact, to let Mr. Lyman know that something had to be done in our lives or else we had to put it aside.

". . .

"Q. After this divorce action was commenced or while this divorce action was pending, or even for that matter during your two prior separations, did you ever have any intention to revoke the community property agreement that had been entered into between you and your husband?

"A. I did not.

"Q. On any of these occasions did you make a new will?

"A. I did not."

wife." We find no mutual abandonment of the community property agreement.

Th next question involves the validity of the September 18, 1970 will and the propriety of confirming Jannie M. Lyman as executrix. A community property agreement under RCW 26.16.120 cannot derogate from the rights of creditors and it is inapplicable to separate property. Furthermore, such an agreement may be mutually modified so as to restrict the subject matter, or it may become inoperable by mutual abandonment. It is not uncommon, therefore, for parties to a community property agreement to execute wills in conjunction with such agreement to cover possible separate property, or undisposed of community property, or to provide for the case of simultaneous deaths (RCW 11.05), and to provide a method for cutting off the claims of creditors under the nonclaim statute, RCW 11.40.010. The wills so made are necessarily subject to the obligations of a previously executed community property agreement.

■ In the instant case, each spouse executed a will contemporaneously with the execution of their community property agreement and consistent therewith. The obligations of the community property agreement could not be changed or abandoned by one party alone. Nevertheless, a later executed will, to the extent consistent with the community property agreement, upon admission to probate, could be given effect in accordance with its terms. The provision for the appointment of the wife as executrix was consistent with the community property agreement. Under that provision, there being no showing that she was disqualified for any reason, the wife was entitled to appointment. RCW 11.28.010.

■ Appellant contends the court erred in appointing Jannie M. Lyman as executrix because her application for appointment was not made until after the expiration of 40 days following decedent's death. We do not agree that the court erred. It is true that under RCW 11.28.030, conferring upon the surviving spouse the prior right to administer community property, and under RCW 11.28.120, according

priority to a surviving spouse to administer the estate of the deceased spouse dying intestate, there is a 40-day period in which the respective statutory rights conferred must be exercised or else be lost. No such 40-day limitation, however, exists in the case of a personal representative appointed by will. RCW 11.28.010. If the will is admissible to probate, and if the personal representative named therein is not disqualified, the named surviving spouse is entitled to the appointment. A probate court may properly hold a surviving spouse is not disqualified to serve not only because such surviving spouse is appointed as personal representative, but because, by virtue of a community property agreement which in effect covers all marital property, the surviving spouse is the owner of the entire estate upon which the will may operate.

Jannie M. Lyman, as cross-appellant, to further protect her community property survivorship rights against the divestiture by decedent's will, contends the will is invalid because improperly executed. She points out the witnesses signed the will before the testator signed it. She accordingly contends that RCW 11.12.020, dealing with execution requirements of a will, properly construed, requires that the testator sign first and the witnesses next sign so as to attest to his signature. Although the authorities are divided, there is substantial case law that the order of signing a will is unimportant if the signatures of the witnesses and the testator were all part of one transaction. *Hopson v. Ewing,* 353 S.W.2d 203 (Ky. App. 1961), 91 A.L.R.2d 733; *Billings v. Woody,* 167 F.2d 756 (D.C. Cir. 1948), *cert. denied,* 335 U.S. 822, 93 L. Ed. 377, 69 S. Ct. 46; *In re Estate of Lee,* 225 Cal. App. 2d 578, 37 Cal. Rptr. 572 (1964). It is unnecessary, however, to decide the matter. Cross-appellant sought the decree we have affirmed and complied therewith. She cannot inconsistently attack the decree beneficial to her even if she directly or contingently disagrees, in whole or in part, with the legal theory by which her ownership and control of the entire community estate was decreed to her and her acts of administration as executrix

affirmed. She has either waived her right to attack the will, or is estopped so to do. She is not a party aggrieved. *See* CAROA 14, 33(3); *In re Estate of Leslie,* 137 Wash. 20, 241 P. 301 (1925); *Bauer v. Bauer,* 5 Wn. App. 781, 490 P.2d 1350 (1971).

The judgment is affirmed.

WILLIAMS and CALLOW, JJ., concur.

Petition for rehearing denied December 29, 1972.

Review granted by Supreme Court February 6, 1973.