## Speshiots et al. v. Coclanes et al.

October 4, 1949.

Rehearing denied December 16, 1949.

548

Blakey Helm and Hector E. Rose for appellants.

Guy C. Shearer, Jones, Keith & Jones and Joseph J. Kaplan for appellees.

VAN SANT, COMMISSIONER—Affirming.

The appeal is from a judgment of the Jefferson Circuit Court, declaring an instrument of writing, probated April 10, 1946 in the Jefferson County Court, to

be the last will and testament of John G. Damaskis, who died April 6, 1946.

We will recite only so much of the history of the Damaskis family as appears to us to be necessary to establish the relationship of the parties to the testator and to each other.

Charles (Gus) Damaskis came to Louisville from Greece in the year 1900; his brother John, the testator, joined him in the year 1903. The brothers established a partnership for the manufacture and sale of candies, and lived together over their place of business on South Preston Street in Louisville. Shortly before John left Greece, the wife of his brother James, now deceased, gave birth to a daughter. The mother of the child died at the birth and the little girl was named Panogiota Damaskis. She was raised by her paternal grandmother for whom she was named. Charles and John sent money to their mother to raise and educate the child, and when the latter became twenty years of age, in the year 1922, the brothers asked their mother to send their niece to America to keep house for them. She lived with the brothers for two years when she intermarried with George Coclanes with the permission of her uncles. The young married couple moved to Chicago, but, by visitations and correspondence, continuously communicated with the Damaskis brothers. Charles became seriously ill and died in the year 1943. Before his death Mr. and Mrs. Coclanes and their daughter Louise came to Louisville and performed the functions of Charles in the partnership business. At that time John was in declining health, and, after the death of his brother, arranged with the Coclanes family to remain in Louisville and operate the entire business. In the year 1945, John entered a hospital for a hernia operation. His physical condition in general was at a low ebb; he was nervous, depressed, and weak; he was having trouble with his heart and was the victim of a mild case of diabetes. When he left the hospital in August a cancer had manifested itself by a swelling in the neck. He returned to the hospital in September where he was treated for an ailing heart, diabetes, and by deep X-ray therapy, for the cancer. With little or no improvement, he was discharged from the hospital in October but returned in January 1946 in a very critical condition. The cancer

had extended to the back of his throat, rendering it difficult for him to swallow, talk, expectorate, or breathe. He was suffering extreme pain and the treatment afforded no relief—his condition was hopeless.

While hospitalized in June 1945, the testator executed a will which was not witnessed and upon which no one now relies. His second will was executed March 3, 1946 at his residence, and is the one in respect to which judgment was pronounced. The will was probated in the County Court and propounded in the Circuit Court by the niece, Panogiota Coclanes, the executrix and chief beneficiary. The will was contested in the Circuit Court by Metaxia Speshiots and Stavroula Maheras, sisters of the testator, who continuously have lived in their native Country—Greece. The contestants are specific legatees under the will in sums of $2,000 and $1,000 respectively. Other legatees in amounts set opposite their names were made parties and are appellees on this appeal, to wit:

| | |
|---|---|
| Greek Orthodox Church of Louisville | $700.00 |
| Mae Gianacakes | 100.00 |
| Peter Gianacakes | 100.00 |
| Constantine Gianacakes | 100.00 |
| Thomas Gianacakes | 100.00 |
| William Gianacakes | 100.00 |
| Gust Gianacakes | 100.00 |
| May Gianacakes (now Mrs. Stanley Demas) | 100.00 |
| James Gianacakes | 250.00 |
| George Gianacakes | 250.00 |

Thus, if the will should be upheld, appellants will receive specific bequests in the sums of $2,000 and $1,000 respectively, and appellee, Panogiota Coclanes, will receive the bulk of the estate under the residuary clause; whereas, if the will is set aside, each appellant and Mrs. Coclanes will receive equal shares of the entire $45,000.00 estate.

The will was attacked on the grounds: of (1) undue influence; (2) lack of testamentary capacity; (3) absence of intent on the part of the testator to make a will; and, (4) failure of testator to execute the writing as required by statute. On the trial, the jury found the questioned document to be the last will and testament of John G. Damaskis; and appellants now concede

that the evidence admitted by the Trial Judge is sufficient to support the verdict. Reversal is sought on the grounds that the Court erred: (1) in permitting propounder's daughter (Louise Coclanes), a witness for her mother, to remain in the courtroom throughout the trial; (2) in permitting references to be made to the probate of the will in the County Court; (3) in permitting counsel for propounder to persist in asking leading and incompetent questions; and (4) in admitting incompetent evidence.

The rule for the separation of witnesses was invoked, and the Court ordered the witnesses to separate and retire from the courtroom. Thereupon appellee moved the Court to permit her daughter, Louise Coclanes, to remain in the courtroom during the trial, and filed the joint affidavit of her attorneys Stephen S. Jones and Joseph J. Kaplan in support of the motion. The affidavit reads:

"The affiants, Stephen S. Jones and Joseph J. Kaplan, state that they are counsel for Panogiota Coclanes, the propounder of the will of John G. Damaskis, deceased; that under the terms of said will, Panogiota Coclanes is the residuary devisee and a defendant in the within action; that the said Panogiota Coclanes is a person of Greek descent; that she is not well versed in English or the English language, and does not have a fluent mastery of the English language; that she is difficult to understand, and that it is difficult for her to speak the English language in a comprehensible manner; that it is necessary, in the interest of justice in the within action and absolutely necessary for counsel, in their presentation of this case, that the daughter of Panogiota Coclanes, who is known as Louise Coclanes, be permitted to sit in the Court Room at her seat at counsel's table, in order to help these affiants, in the matter of the interpretation of the witness to the client and of client to counsel. Affiants further state that the said Louise Coclanes was permitted by counsel for the contestants to remain in the Court Room during the first trial of this action, and no harm can be done to contestants, if the Court exercises its discretion in permitting Louise Coclanes to assist in the manner aforesaid.

"Affiants state that during their representation of said Panogiota Coclanes they have constantly had the assistance, and needed the assistance of Louise Coclanes in the preparation of their case.

"The affiants, Stephen S. Jones and Joseph J. Kaplan, and each of them, on oath say that the statements in the foregoing affidavit are true, as they verily believe.

"/s/  Stephen S. Jones"
"/s/  Joseph J. Kaplan"

"Subscribed and sworn to before me by Stephen S. Jones and Joseph J. Kaplan, this 17th day of May, 1948. My commission expires March 26, 1950."

"/s/  Jos E. Longstreet
N. P. J. Co. Ky."

Appellants did not contradict the statements contained in the foregoing affidavit. The substance of the affidavit is that the propounder of the will and her counsel were in need of an interpreter in their conversations with each other, and that the daughter of the propounder was qualified and willing to act in that capacity. It further appears from the affidavit that the interpreter heard all of the witnesses testify in the first trial of the case, which, incidentally, resulted in a directed verdict upholding the will.

The rule for the exclusion of witnesses is contained in Section 601 of the Civil Code of Practice and provides: "Exclusion of witnesses; persons rule does not apply to. If either party require it, the judge may exclude from the court-room any witness of the adverse party not at the time under examination, so that he may not hear the testimony of the other witnesses. But this rule shall **not** apply to the parties to the action, or the officers of court."

The reason for the adoption of the rule is to prevent the witnesses excluded from hearing the testimony of other witnesses with the possible result that the testimony of the others might lead the witness to answer in such manner as to conform with other testimony, even though, as is often the case, the witness herself is not conscious of this subtle influence. But the affidavit filed in support of the motion to permit Louise to remain

in the court-room shows that she already had heard the testimony of the other witnesses in the case. Therefore, the prejudicial effect of her presence in the court-room on the second trial was negligible, if prejudicial at all. In addition to this, the uncontradicted statements of the affidavit are to the effect that it was necessary for counsel and their client to have an interpreter to properly conduct the trial of the case, and it was less expensive and perhaps more satisfactory to have their client's daughter to act in this capacity than to employ someone unfamiliar with the parties and the issues. We think the Court properly permitted the witness to remain in the court-room and assist counsel in conducting the trial. Matthews' Adm'r v. Louisville and Nashville Railway Company, 130 Ky. 551, 113 S. W. 459.

Before the commencement of the trial, counsel for appellants requested the Court to exclude from the oath to be administered to the jurors any reference to the fact that the will had been probated in the Jefferson County Court. The motion was overruled and the following oath was administered: "You, and each of you do solemnly swear that you will well and truly inquire into, and from the evidence in your verdict, whether or not the instrument of writing bearing the date of March 2, 1946, admitted to probate by the Jefferson County Court on April 10, 1946, and purporting to be the last will and testament of John G. Damaskis, in controversy herein is, or is not the last will and testament of John G. Damaskis, so help you God."

On the trial of the case the original will was introduced in evidence by a deputy clerk in the probate division of the county clerk's office. Below the signatures on the last page appears the following certificate:

"State of Kentucky: At a County Court held for Jefferson County at Court House in City of Louisville on April 10, 1946 was produced in Court the foregoing instrument of writing purporting to be the last will and testament of John G. Damaskis deceased, late of this County, who died April 6, 1946 resident thereof; and same was proven by testimony of Alex I. Bass, Louis Hyman, P. L. Kozlove, the subscribing witnesses thereto, who also proved the attestation of Sam Dietz, the other subscribing witness thereto; whereupon same was

established and adjudged by the Court to be the last will and testament of said testator and ordered to be recorded as such; and I hereby certify that same is recorded in my office as Clerk of said Court.

"Witness my hand this April 10, 1946."

"Otto C. Ruth, Jr., Clerk

"By Russell S. Shrader, D. C."

It is contended by appellants that reference in the oath to the fact that the will had been probated by the County Court and the introduction of the original will on which the above quoted certificate was recorded violated the rule that will contest cases shall be tried de novo. Appellants rely on the opinion rendered in Hall v. Hall, 153 Ky. 379, 155 S. W. 755, 757. In that case the Court said: "The court allowed the proceedings in the county court to be read to the jury, and these proceedings were referred to in the instructions of the court to the jury. On appeal in a will case the trial is de nova, and the proceedings in the county court should not be read to the jury, as the jury are to decide the case from the evidence before them, and not from the judgment of the county court which is entitled to no weight on the jury trial."

The opinion in that case does not recite the substance of the proceedings had in the County Court which was admitted in evidence on the trial in the Circuit Court. However, we have examined, and now have before us, the original record in that case. The Court required the propounder of the Hall will to introduce evidence for the purpose of proving the will was probated in the County Court. The fact that the will was probated was not an issue in the case, and the Court should not have required the propounder to introduce evidence of this uncontradicted fact. But the prejudicial error attendant upon this proof was contained in the instructions to the jury, wherein the Court required the jury to believe that the will had been probated in the County Court as a condition precedent to their finding it to be the last will and testament of Mr. Hall. As we read the language above quoted from the Hall opinion in the light of the evidence and particularly in the light of the instructions of the Court, we believe the decision in that case does not support appellants'

contention. True it is that the trial in the Circuit Court shall be conducted de novo, but the jurisdiction of the Circuit Court in respect to the probate of wills is appellate only and the will must be probated or refused for probate before an appeal will lie. Mere reference to the fact that the will has been probated does not seem to us to have been prejudicial to the rights of the contestants, and reference to probate in the oath cannot be calculated to create an impression of the validity of the instrument in the minds of the jurors. In this particular case, we think that it was especially non-prejudicial because the original instrument itself shows on its face that it has been probated. It may be true that the jury did not see this certificate because it does not appear in the record that the original instrument was examined by the jury; but it was filed as a part of the evidence and could have been examined by the jury. Under the rules of evidence established by this Court in will contest cases, the burden of producing the will and proving its proper execution rests on the propounder. Introduction of the original instrument is particularly important where one of the grounds of contest is that the will was not properly executed. Ramsey et al. v. Howard et al., 289 Ky. 389, 158 S. W. 2d 981. Since the original will could not have been produced without likewise producing the certificate written thereon, we are of the opinion that, if the Court had erred in wording the oath to be administered to the jury, such error would not have been prejudicial to appellants.

In support of the third ground for reversal, viz., the Court erred in permitting counsel for propounder to persist in asking leading and incompetent questions, appellants point to nine questions. Eight of these questions were asked in the presence of the jury, the first was asked out of their presence. Certainly the asking of the first question, which properly was ruled incompetent, did not prejudice appellants substantial rights, because the jury did not hear the question. Of the remaining eight questions two were competent, but the answers were incompetent; and one was competent but ruled to be incompetent. Counsel cannot be blamed for the incompetent manner in which the witness answered the competent questions, since the Court properly excluded the answer from the consideration of the

jury. However five questions were asked appellee in the presence of the jury, all of which dealt with communications between her and testator in his lifetime. The first of these questions is: "Had John, in the presence of Charles, at any time prior to his death, ever discussed with you what would be done with their property when they died?"

The second question: "When he came home, did John ever talk to you about that paper which you found in the drawer in the hospital?"

The third question: "During the time that John was at home during that period, did he make any request from you or to you, or did he make any request that a lawyer be called, and that he be given an opportunity to write his will the way he wanted it written?"

The fourth question: "Now, on the occasion of the first time when Judge Shearer was making these notes for John's will, did you hear John say to Judge Shearer anything about the will which he was said to have executed out at the infirmary or hospital?"

The fifth question: "Did John ever tell you that he left any money in the trunk that you had gotten?"

The Court refused to permit the witness to answer any of the questions, but it is the contention of appellant that the persistency with which counsel indulged in asking questions concerning communications with a dead person had the effect of impressing the minds of the jurors with the ideas of the witness, irrespective of the ruling of the Court that the questions were incompetent. We are not impressed with this argument in this particular case, although we would not be understood to approve the conduct of counsel in this respect. Had the evidence been admitted, it would have been cumulative in most instances, if not in all; and it was rendered incompetent merely because the witness was not the proper one to testify concerning the matters about which she was interrogated. In other words, it was the witness who was incompetent to testify; the substance to be elicited by the questions would have been competent if testified to by some person not testifying in her own behalf, and, as we have said, other witnesses did testify to the same facts. Under these circumstances this ground for reversal cannot be upheld.

The final complaint is that the Court erred in permitting the witness Louise Coclanes to testify as to certain entries in the partnership account books of her uncles. Louise did not make the original entries and the person who did make them was dead. But the evidence adduced by this testimony merely substantiated the contention of the complaining parties that since the testator sent large sums of money to his sisters in Greece during his lifetime, it would be unnatural for him to cut them off with a mere pittance in his will. The evidence complained of was confined to entries showing the testator and his brother in their lifetime sent large sums of money to appellants at more or less regular intervals. We think the evidence was competent, 20 Am. Jur., Section 1083, p. 943, but if not, it was more favorable than prejudicial to the contention of appellants.

The judgment is affirmed.