[No. 3076–8–III. Division Three. January 29, 1980.]

E. A. NORRIS, *Respondent,* v. HENRY C. NORRIS, ET AL, *Appellants.*

*Gary A. Dahlke* and *Paine, Lowe, Coffin, Herman & O'Kelly,* for appellants.

*Frank J. Gebhardt* and *Gebhardt, Looney & Sherrick,* for respondent.

McINTURFF, J.—The respondent, E. A. Norris, brought this action to quiet title to certain ranch lands against the competing claims of his son, Henry, and grandson, Ernest, the appellants.

E. A. Norris married Irene Norris, now deceased, in 1932. During their marriage they acquired real property known as the Warm Springs Ranch—the subject of this controversy. The Norrises had no children, but in 1950 they adopted the appellant, Henry C. Norris, whom they had raised from infancy. Henry Norris married in 1951 and moved onto the Warm Springs Ranch where, until this lawsuit, he lived and worked. Henry and his wife, Pat, have two grown children, one of whom, Ernest, is also an appellant.

In 1970, Mr. and Mrs. Norris consulted their attorney for estate planning advice. Upon his recommendation, the Norrises executed reciprocal wills whereby the surviving spouse received a life estate in the ranch, with the remainder to their son, Henry, and grandson, Ernest.

Shortly after the execution of these wills, the Norrises visited friends, who advised them of the advantages of a community property agreement as an estate planning device. They were told such an agreement would result in substantial probate and tax savings. With the help of their friends, and without professional advice, Mr. and Mrs. Norris executed a community property agreement which was recorded on June 10, 1970. The previously executed wills were never revoked.

Mrs. Norris became ill and died on August 7, 1970. Mr. Norris was under the impression it was unnecessary to probate his wife's will because of the community property agreement. Thus, he did not consult his attorney until September. At that time, the attorney explained to him the unfavorable tax consequences which would result under the community property agreement as opposed to the probate of his wife's will. With this information, Mr. Norris directed his attorney to probate the will.

Thereafter, the probate was commenced and Mr. Norris was appointed executor of his wife's estate. He personally

executed all of the documents incident to the probate; however, due to illness, his attorney appeared in court on his behalf. The court was never advised of the existence of the Norrises' community property agreement. In June 1972, pursuant to the will a decree of distribution was entered, granting Mr. Norris a life estate in the ranch, with the remainder to Henry. No appeal was taken and the estate was closed in January 1974.

After his mother's death, Henry leased the ranch from his father. As consideration for the lease, Henry was responsible for the mortgage payments, taxes, insurance and general maintenance of the property. During this time, Henry made various improvements to the property, totaling approximately $20,000.

In 1974, Henry asked his son, Ernest, and his wife, Debi, to join him in the operation of the ranch. Anticipating that one day he would inherit the ranch from his father, Ernest and his wife left their existing jobs in Spokane, Washington, to make their home at the Warm Springs Ranch.

In September 1975, E. A. Norris married his present wife, Kathleen, who is 30 years his junior and a former realtor. One month later at a family conference, Mr. Norris made a demand upon Henry for additional rent. A dispute then arose regarding Henry's claim to an interest in the ranch under the terms of his mother's will. Kathleen Norris told Henry that his father owned the entire ranch in fee simple by virtue of the community property agreement. The dispute ultimately culminated in the present lawsuit in which E. A. Norris sought to establish his complete ownership of the farm under the terms of the community property agreement. The trial court quieted title to the ranch in favor of E. A. Norris, and this appeal by Henry and Ernest H. Norris followed.

A composite principle emerges from the cases cited by the appellants, Henry and Ernest Norris:[1]

---

[1] *Golden v. McGill*, 3 Wn.2d 708, 102 P.2d 219 (1940); *O'Leary v. Bennett*, 190 Wash. 115, 66 P.2d 875 (1937); *Reagh v. Dickey*, 183 Wash. 564, 48 P.2d 941

A decree of distribution stands upon the same footing as any other judgment rendered by a court of general jurisdiction; it constitutes in itself a construction of the will of the decedent; and even though it be erroneous in law, yet if it be rendered upon due process of law and no appeal therefrom is taken, it becomes a final and conclusive adjudication determining what property belongs to the decedent's estate, the nature thereof, and the person or persons who have acquired the title to it.

*Tacoma Sav. & Loan Ass'n v. Nadham,* 14 Wn.2d 576, 594, 128 P.2d 982 (1942).

In answer to this principle, the respondent, E. A. Norris, states:

The function of the decree of distribution is to determine heirship and to distribute to the heirs entitled thereto *only such interest* as the decedent has at the time of his or her death. *Manifestly, if the decedent does not own the property,* which is the situation in the case at bar, the decree of distribution does not pass title.

. . .

. . . *As the res in such a* [probate] *proceeding does not include property inventoried in the estate if such property does not belong to the decedent, the owner of that property would not be estopped by the decree of distribution unless the question of title to the property was before the probate court.*

"The inventory is not conclusive as to the assets of the estate, or as to rights with respect to the property listed therein, at least where there has been no specific judicial determination of the question." 21 Am. Jur. 471.

(Some italics ours.) *Mezere v. Flory,* 26 Wn.2d 274, 279–80, 173 P.2d 776 (1946). *See also Parr v. Davison,* 146 Wash. 354, 357, 262 P. 959 (1928).

Despite the probate of Irene Norris' will, the trial court quieted title to the ranch in favor of E. A. Norris. The court reasoned that by virtue of the community property agreement, which became effective upon the death of Irene Norris, there was no property in her estate, hence, there

---

(1935); *Alaska Banking & Safe Deposit Co. v. Noyes,* 64 Wash. 672, 117 P. 492 (1911); *In re Estate of Ostlund,* 57 Wash. 359, 106 P. 1116 (1910).

was no property subject to distribution pursuant to the final decree entered by the probate court. We find the trial court erred as a matter of law.

■ A community property agreement under RCW 26.16.120 is not a will; it is a "contract *sui generis.*" *In re Estate of Dunn,* 31 Wn.2d 512, 526, 197 P.2d 606 (1948); *In re Estate of Lyman,* 7 Wn. App. 945, 948, 503 P.2d 1127 (1972). Community property agreements enable a husband and wife to enter into a contractual agreement regarding the status and disposition of their property to take effect at death.[2] When one of the parties to the recorded contract dies, the agreement is *completely executed*—thus title to the community property immediately vests as the sole and separate property of the survivor.[3]

■ On the other hand, there is nothing to prevent the survivor from renouncing or disclaiming the property to which he or she is entitled under the terms of a community property agreement. RCW 11.86 recognizes this principle and sets forth a procedure whereby a surviving spouse may disclaim in whole or in part any interest under a community property agreement.[4]

---

[2]RCW 26.16.120:

"Nothing contained in any of the provisions of this chapter or in any law of this state, shall prevent the husband and wife from jointly entering into any agreement concerning the status or disposition of the whole or any portion of the community property, then owned by them or afterwards to be acquired, to take effect upon the death of either."

*See also Neeley v. Lockton,* 63 Wn.2d 929, 933, 389 P.2d 909 (1964); *In re Estate of Wittman,* 58 Wn.2d 841, 843, 365 P.2d 17 (1961); *In re Estate of Brown,* 29 Wn.2d 20, 27–29, 185 P.2d 125 (1947).

[3]"The agreement is effective immediately upon death so that title passes to the survivor at that instant." Brachtenbach, *Community Property Agreements— Many Questions, Few Answers,* 37 Wash. L. Rev. 469, 475 (1962).

[4]RCW 11.86.010:

"(1) 'Beneficiary' means and includes any person entitled, but for his disclaimer, to take an interest: By intestate succession, devise, legacy, or bequest; . . . under a trust, testamentary or nontestamentary instrument or . . . *community property agreement;*" (Italics ours.)

RCW 11.86.020:

Here, after consulting with his attorney regarding the tax consequences which would result under the community property agreement, Mr. Norris directed his attorney to "go with the Will."[5] In connection with the probate of his wife's estate, E. A. Norris, as executor, personally signed all of the documents necessary to probate the estate, including: the petition for probate, letters testamentary, oath of executor, notice to creditors, inventory and appraisement, petition and order of solvency, petition for family allowance of $1,000, final account and report and petition for distribution, and receipt of his distributive share under the final decree.

The petition for a decree of distribution signed by E. A. Norris requested the court to distribute the property as follows:

All of the estate of the decedent was the community property of decedent and E. A. Norris and decedent's community one–half interest in the estate should be distributed in accordance with the terms of her Will as follows:

. . .

b. All of Section 5 (except 15.3 acres conveyed for gravel pit and excepting 21.5 acres conveyed to P.T.&T. Co.) in Township 16 North, Range 38, E.W.M., Adams County, Washington, *to E. A. Norris for life with the remainder interest to Ernest H. Norris, grandson.*

c. The remaining real estate described in items 2 to 9 inclusive, under the heading Real Property in the Inventory, should be distributed *to E. A. Norris for life and the remainder interest therein should be distributed to Henry Clayton Norris, son.*

. . .

/s/ E. A. Norris
[Signed May 3, 1972.]

---

"A beneficiary may disclaim any interest in whole or in part, or with reference to specific parts, shares or assets thereof, in the manner provided in RCW 11.86-.030 and 11.86.040."

[5]Taken from the testimony of Edward Cross, who was the Norrises' personal attorney.

(Italics ours.) In addition, E. A. Norris signed a receipt which provided:

Receipt of my full distributive share of the above estate in accordance with Decree of Distribution of June 30, 1972 is hereby acknowledged.

/s/ E. A. Norris

■■ Although the disclaimer statute, RCW 11.86, was not in effect at the time of Mrs. Norris' death, we hold that when Mr. Norris, as executor, elected to probate his first wife's will, and accepted the benefits thereunder, he disclaimed, by operation of law, his rights under the community property agreement.[6] In the absence of fraud, deceit or coercion, one cannot repudiate his own signature on an instrument whose contents he was *in law* bound to understand.[7] This principle disposes of the trial court's finding that E. A. Norris did not have a full understanding of the implications of the probate proceeding. In this regard, Mr. Norris is also bound by the acts of his attorney, whom he had retained to represent him in the probate proceedings. *Haller v. Wallis,* 89 Wn.2d 539, 547, 573 P.2d 1302 (1978); *Snyder v. Tompkins,* 20 Wn. App. 167, 173, 579 P.2d 994 (1978).

Upon the death of Irene Norris, title to the Warm Springs Ranch passed to E. A. Norris as his sole and separate property. Rather than accept the benefits under the community property agreement, E. A. Norris elected to

---

[6]The disclaimer statute is not in derogation of the common law, for in cases of testate succession, the law did not compel a devisee to accept a devise without his consent. RCW 11.86 merely extends this principle to cases of intestate succession so that the heir can now disclaim the interest he has acquired by descent as freely as the devisee under a will. *See* 6 W. Bowe and D. Parker, *Page on Wills* § 49.1 *et seq.* (1962).

[7]*Pierce v. Lake Stevens School Dist. 4,* 84 Wn.2d 772, 788, 529 P.2d 810 (1974); *National Bank of Wash. v. Equity Investors,* 81 Wn.2d 886, 912, 506 P.2d 20 (1973); *Forsman v. Aetna Cas. & Sur. Co.,* 22 Wn. App. 394, 402, 590 P.2d 353 (1979); *Daniel v. Pacific Northwest Bell,* 20 Wn. App. 444, 446, 580 P.2d 652 (1978); *Alexander & Alexander, Inc. v. Wohlman,* 19 Wn. App. 670, 680, 578 P.2d 530 (1978); *H. D. Fowler Co. v. Warren,* 17 Wn. App. 178, 180, 562 P.2d 646 (1977).

probate his first wife's previously executed and unrevoked will. He thus disclaimed his interest in the property in favor of his wife's estate and later acknowledged receipt of his distributive share under the will, to wit, a life estate.[8]

■ Mr. Norris, being a man of ordinary understanding, who had the opportunity to consult with an attorney and to inspect the documents which he signed, cannot now be heard to repudiate his signature or the judicial decree entered by the probate court in response to his petition. Were we to hold otherwise, the integrity and finality necessarily accorded to decrees by the probate court would be seriously undermined. As the court said in *Manning v. Mount St. Michael's Seminary of Philosophy & Science*, 78 Wn.2d 542, 548, 477 P.2d 635 (1970):

> orders and decrees of distribution made by superior courts in probate proceedings upon due notice as provided by statute are final adjudications having the effect of judgments in rem, and are conclusive and binding upon all persons having any interest in the estate and upon all the world as well.

Judgment of the Superior Court is reversed.

---

[8]Mr. Norris subsequently informed the Armstrongs, who had assisted in the preparation of the community property agreement, that the community property agreement did not take effect due to the size of his wife's estate.
Geraldine Armstrong testified:
He [E. A. Norris] mentioned it and he mentioned the fact that because of the size of his estate that the community property agreement would not take effect and that the will was going to proceed the way that they had set it up.
Lloyd Armstrong testified:
Yes, he said that it [the community property agreement] would be no good to him because it had a $60,000 clause in it and his estate was too large and he didn't—seemingly he wasn't concerned about it. He just said it just wouldn't work for him.

. . .

Yes, he just couldn't use it.

GREEN, C.J., and ROE, J., concur.

Reconsideration denied February 28, 1980.

Review granted by Supreme Court April 24, 1980.