[No. 3832-7-III.   Division Three.   January 19, 1982.]

*In the Matter of the Estate of* NEOMA D. FORD.

*Charles C. Countryman,* for appellant.

*Howard W. Elofson* and *Elofson, Vincent, Hurst & Crossland,* for respondent.

McINTURFF, C.J.—Benjamin Ford appeals the trial judge's determination of a partial revocation of a community property agreement and the denial of an award in lieu of homestead.

Neoma D. Ford was married to Benjamin Ford on May 2, 1968. As a married couple, they executed a statutory community property agreement on July 28, 1969. The pertinent clauses of the agreement stated:

## I.

That all property of whatsoever nature or description whether real, personal or mixed and wheresoever situated now owned or hereafter acquired by them or either of them shall be considered and is hereby declared to be community property.

## II.

That upon the death of either . . . title to all community property as herein defined shall immediately vest in fee simple in the survivor of them.

On October 2, 1972, Mrs. Ford executed a will which left all of her assets to her four children from a previous marriage. Three years later, on October 10, 1975, Mr. Ford executed a quitclaim deed to Mrs. Ford for two parcels of real estate.[1] The deed conveyed the property to Mrs. Ford "as her sole and separate property . . . including any interest therein which grantor may hereafter acquire."

Mrs. Ford passed away March 12, 1977. Her will, together with the unrecorded deed, was found in her safety deposit box. The trial judge ruled that the two parcels of land deeded to Mrs. Ford were excluded from the community property agreement and passed to her estate as separate property. The trial judge also denied Mr. Ford's petition for an award in lieu of homestead on the property.

The initial issue is whether the inter vivos conveyance of a quitclaim deed from one spouse to another constitutes a partial revocation of a community property agreement regarding the deeded property. Mr. Ford contends the quitclaim deed was invalidated at the death of Mrs. Ford unless there can be found a mutuality of purpose to terminate the agreement.

■ Community property agreements are governed by RCW 26.16.120 which states:

Nothing contained in any of the provisions of this chapter or in any law of this state, shall prevent the husband and wife from jointly entering into any agreement

---

[1]The first parcel was deeded by Mr. and Mrs. Caromel Yocham to the Fords on July 1, 1968. The second parcel was deeded to them by Ruth Wyles on November 16, 1971.

concerning the status or disposition of the whole or any portion of the community property, then owned by them or afterwards to be acquired, to take effect upon the death of either. But such agreement may be made at any time by the husband and wife by the execution of an instrument in writing under their hands and seals, and to be witnessed, acknowledged and certified in the same manner as deeds to real estate are required to be, under the laws of the state, and the same may at any time thereafter be altered or amended in the same manner: . . .

An agreement to rescind a community property agreement must itself be a valid agreement. All parties to the contract must assent to its rescission; there must be a meeting of the minds. *In re Estate of Wittman,* 58 Wn.2d 841, 844, 365 P.2d 17 (1961). As in the case of any contract, the parties may, by mutually manifesting a clear intention to do so, abandon the community property agreement. Uncommunicated, subjective intention to abandon is not enough. *In re Estate of Lyman,* 7 Wn. App. 945, 948, 503 P.2d 1127 (1972), *aff'd,* 82 Wn.2d 693, 512 P.2d 1093 (1973). Here, the court concluded there was insufficient evidence to revoke the entire community property agreement. Mrs. Ford manifested her intent to rescind the entire agreement by making an inconsistent will; however, there was no evidence of Mr. Ford's intention to rescind the entire agreement. Thus, the court properly ruled there was no mutual rescission of the entire community property agreement.

▮ Whether a community property agreement may be partially revoked concerns the ability of Mr. Ford to convey his community property interest in the parcels of land to his wife as her separate property subsequent to execution of a valid community property agreement. When one spouse deeds a community interest in the property to the other, the property becomes the separate property of the grantee spouse unless there is clear and convincing evidence that such was not the intention of the parties. *In re Estate of Monighan,* 198 Wash. 253, 88 P.2d 403 (1939). The language used by Mr. Ford in his quitclaim deed is clear. With

knowledge of the prior community property agreement,[2] he deeded to Mrs. Ford his undivided one–half of the community property interest in the two parcels of land. In *Hesseltine v. First Methodist Church,* 23 Wn.2d 315, 322, 161 P.2d 157 (1945), the court noted:

> Appellants contend that such an agreement [community property agreement] restricts the alienation of any real property of which the community may be seized at the time it is executed. In other words, the only way real property may be alienated after such an agreement is entered into is by modification of the agreement itself. . . .
>
> We think the position of appellants is untenable. The statute is not designed to vest a separate estate in community property in either spouse before the death of the other. That may be accomplished by deed or gift.

There is nothing to prevent a spouse from transferring, via inter vivos deed, the property to which he or she is entitled under the terms of the community property agreement. Mr. Ford expressed his intent to modify the prior community property agreement by the execution of the quitclaim deed which granted Mrs. Ford the two parcels of property as her separate estate "including *any interest* therein which grantor *may hereafter acquire.*" (Italics ours.) Mrs. Ford's intent to modify the same community property agreement was manifested by her acceptance of the deed[3] and its

---

[2]Conveyances between husband and wife are also regulated by RCW 26.16.050 which states in part:

"A husband may give, grant, sell or convey directly to his wife, and a wife may give, grant, sell or convey directly to her husband his or her community right, title, interest or estate in all or any portion of their community real property: And every deed made from husband to wife . . . shall operate to divest the real estate therein recited from any or every claim or demand as community property and shall vest the same in the grantee as separate property[. The] grantor in all such deeds, or the party releasing such community interest or estate shall sign, seal, execute and acknowledge the deed as a single person without the joinder therein of the married party therein named as grantee: . . ."

[3]See footnote 2. RCW 26.16.050 only requires that the *grantor* sign the instrument. In *Snyder v. Roberts,* 45 Wn.2d 865, 871, 278 P.2d 348 (1955), the court noted:

The execution, delivery, and acceptance of a deed varying from the terms of

retention in her safety deposit box. Thus, we find Mr. Ford, by execution of the later quitclaim deed to Mrs. Ford, waived any interest he may have held under their community property agreement—to the extent of the property deeded.

■ Next, Mr. Ford contends the court abused its discretion by denying his petition for an award in lieu of homestead. We note initially there is no abuse of discretion if a reasonable person would take the view adopted by the trial court. *State v. Huelett*, 92 Wn.2d 967, 969, 603 P.2d 1258 (1979).

The award in lieu of homestead provisions are set forth in RCW 11.52.010 which provides in part:

> If it is made to appear to the satisfaction of the court that no homestead has been claimed in the manner provided by law, either prior or subsequent to the death of the person whose estate is being administered, then the court, after hearing and upon being satisfied that the funeral expenses, expenses of last sickness and of administration have been paid or provided for, and upon petition for that purpose, *shall* award and set off to the surviving spouse, if any, property of the estate, either community or separate, not exceeding the value of [$20,000.00] . . .

(Italics ours.) Although granting of the award is generally mandatory, RCW 11.52.012 enunciates several conditions under which the award may be denied or reduced:

> That if it shall appear to the court, either (1) that there are *children of the deceased by a former marriage* . . . then the award in lieu of homestead and exemptions shall lie in the discretion of the court, . . .[4]

the antecedent contract indicates an amendment of the original contract, and generally the rights of the parties are fixed by their expressions as contained in the deed.

[4]RCW 11.52.012 (Laws of 1974, 1st Ex. Sess., ch. 117, § 10, p. 291, effective October 1, 1974).
The statute in effect between July 1, 1967, and September 30, 1974, stated:
That if it shall appear to the court, either (1) that there are *minor or incompetent children of the deceased by a former marriage* . . . then the award in

(Italics ours.)

The statute specifically allows the trial judge discretion in denying the award if there are children, albeit adults, of the deceased spouse by a former marriage. The record indicates Mrs. Ford was survived by four children of a former marriage.

The trial judge's rationale and considerations were set forth in unchallenged conclusion of law No. 7:

> Considering the relatively short duration of the marriage of these parties, their age and past marriages and considering the contribution made by the decedent to the family living expenses and the contribution made by petitioner and *considering the fact that there are children of decedent by a former marriage and petitioner Benjamin N. Ford has property of his own,* the court is of the opinion that equity and justice demand that the Petition for Award in Lieu of Homestead be denied in its entirety.

(Italics ours.) The denial of the petition for an award in lieu of homestead was not an abuse of discretion by the trial judge.

Judgment of the Superior Court is affirmed.

MUNSON, J., concurs.

ROE, J. (dissenting)—Since I conclude that the majority errs in several respects in its analysis of the facts and the law, I must dissent.

The parties executed a community property agreement pursuant to statute. That statute, RCW 26.16.120, determines how such an agreement may be made and how it may be altered or amended. Its execution must be in writing and acknowledged in the same manner as deeds of real estate and "the same may at any time thereafter be *altered or amended in the same manner: . . ."* (Italics mine.) The agreement was signed by the parties and it converted all

---

lieu of homestead and exemptions shall lie in the discretion of the court, . . . (Italics ours.) The statute was reenacted in 1977 (Laws of 1977, 1st Ex. Sess., ch. 234, § 9, p. 850, with the words "minor or incompetent" remaining deleted.

property, personal and real, presently owned, to community property. It also converted all such property described as "hereafter acquired" to community property, and in addition provided that title to all community property as defined above would immediately vest in fee simple in the survivor.

Despite the language in the statute providing for the method of altering or amending the agreement, the majority states that "Mrs. Ford manifested her intent to rescind the entire agreement by making an inconsistent will; . . ." The majority further states that, since there was no evidence of Mr. Ford's intention to rescind the entire agreement, the trial court properly ruled there was no mutual rescission of the *entire* community property agreement. But the conclusion of the majority that there was a partial rescission seems to be contrary to *In re Estate of Wittman,* 58 Wn.2d 841, 365 P.2d 17 (1961), where both the husband and wife had, subsequent to execution of the community property agreement, executed wills some 5 months apart. The court then, refusing to hold that such execution of wills amounted to a rescission of the community property agreement, stated that all parties must assent to its rescission and there must be a meeting of the minds. Since the parties had not mutually, which would mean a concurrent meeting of minds, assented to the rescission of the community property agreement, it was not rescinded, and the court held: "There was no oral agreement to rescind because there was no meeting of the minds." *In re Estate of Wittman, supra* at 845. That court further rejected the contention that the community property agreement was rescinded by the acts of one party inconsistent with its existence and similar acts by the other party. Even though the husband and wife in *Wittman* had executed wills and performed acts inconsistent with the existence of the agreement, there was no evidence of acquiescence, because neither of them knew the other had made an inconsistent will. In the case at bench, Neoma executed a will inconsistent with the community property agreement in 1972. Mr. Ford executed the

quitclaim deed 3 years later. There was no showing he acquiesced in her will, which attempted to repudiate the community property agreement. He vigorously objected.

In *In re Estate of Lyman,* 7 Wn. App. 945, 503 P.2d 1127 (1972), *aff'd,* 82 Wn.2d 693, 512 P.2d 1093 (1973), after the parties had executed a community property agreement, there were separations and the wife commenced a divorce action. Later the husband executed a will bequeathing his half of the community property to his stepson. He then died. In denying the community property agreement had been rescinded, quoting *Wittman,* the court stated at page 949:

> [A]ll parties to the contract must *assent* to its rescission and there must be a *meeting* of their minds.
>
> Uncommunicated subjective mutual intention to abandon is not enough. The intention of each party, to be legally operative, must be a manifested intention.

(Citation omitted.) Since that holding indicated the mere making of an inconsistent will does not amount to a mutual abandonment, and since there is no case holding delivery of a quitclaim deed (knowledge of which was not communicated to the other spouse, and which deed was executed some 3 years after an inconsistent will) indicates an abandonment, there is no manifest mutual intention to alter or rescind.

The majority errs in holding that the inter vivos conveyance and delivery of a quitclaim deed from one spouse to another constitutes a partial revocation of the community property agreement regarding the deeded property. This is pure speculation. There is no authority cited for such a novel position. We do not know the reasons for the conveyance by the husband to the wife. It may be, since he was 10 years older than she was, her predeceasing him was a startling surprise. He may have quitclaimed the property to her thinking he was avoiding some separate creditor, or there might be a possible tax purpose. Since he was leaving the state, it may be he, as others have done, quitclaimed the property to his spouse in order to facilitate a possible sale

and transfer of title. Many servicemen, some unwisely, quitclaimed their property to a spouse while they were absent.

Even the execution of the will by Neoma in 1972 is not inconsistent with the community property agreement; in fact, wills and such agreements are frequently executed simultaneously. The parties could die in a common disaster. The surviving spouse would certainly want a will to dispose of such spouse's property.

*Hesseltine v. First Methodist Church*, 23 Wn.2d 315, 161 P.2d 157 (1945), is not in point, because the deed was executed to a third person by both the husband and wife.

I certainly agree a community property contract is merely a contract. It may be revoked; it may be abandoned or altered; and it is subject to the infirmities which inhere in any purported contract. There is no showing here that the parties did not understand the meaning of the contract and there is no showing of any mutual assent to revoke it in part or in whole. Thus, I would reverse.

Reconsideration denied March 12, 1982.