[No. 60774-5.    En Banc.    February 3, 1994.]

MARYLYNNE HIGGINS ET AL, *Respondents*, v. JOANNE
STAFFORD, *as Personal Representative, Appellant.*

*Boyd S. Wiley* (of *Campbell, Dille & Barnett*), for appellant.

*Betzendorfer & Granoski*, by *Charles M. Granoski*, for respondents.

JOHNSON, J. — The issue presented is whether mutual wills executed according to an agreement regarding the testamentary disposition of community property control over a prior inconsistent community property agreement. The community property agreement provided that upon the death of one spouse, the deceased spouse's property would vest in fee simple in the survivor. In contrast, the mutual wills and underlying will agreement prevented the surviving spouse from changing their agreed-upon testamentary disposition of the property. We conclude the mutual wills and will agreement demonstrated a mutual intent to rescind the prior community property agreement.

## FACTS

In 1967, Odous and Lois Stafford executed a community property agreement (1967 community property agreement or 1967 agreement), which provided that upon the death of either, the deceased's community property would pass to the survivor in fee simple. In 1977, the Staffords executed mutual wills which also provided that the deceased's community property would pass to the surviving spouse, but subject to the provisions of a second agreement regarding

the disposition of their community property (1977 agreement). The 1977 agreement stated in relevant part:

WHEREAS, LOIS JEWEL STAFFORD and ODOUS TREVE-LYN STAFFORD are husband and wife and have accumulated a community estate and are desirous of preparing Last Wills and Testaments whereby the "Wife" shall bequeath, devise and give all of her said assets to her "Husband" should he survive her, and whereby the "Husband" shall bequeath, devise and give all of his assets to "Wife" should she survive him; and

WHEREAS, it is the desire of both "Wife" and "Husband" that an Agreement be entered into concerning the surviving spouse and a limitation upon that said surviving spouse's testamentary disposition of the deceased spouse's one-half interest in the community assets, either by testamentary disposition or by Community Property Agreement, or Joint Tenancy Agreement, or any other Agreement; and

WHEREAS, it is the desire of the parties that it is in the best interests of each, to-wit: "Wife" and "Husband" that the surviving spouse does not convey by testamentary disposition or enter into a Community Property Agreement, or a Joint Tenancy Agreement or any other Agreement or document conveying the deceased spouse's one-half interest in the said estate other than to the surviving children upon the death of the surviving spouse; and

WHEREAS, the parties have agreed to the within Agreement, and for valuable consideration and mutual covenants, now, therefore, it is hereby mutually agreed as follows:

WITNESSETH:

1. That the "Wife" and the "Husband" hereby agree that the surviving spouse, between the two of them, shall not prepare a Community Property Agreement with any other party, or a Joint Tenancy Agreement with any other party conveying the undivided one-half interest of the deceased spouse's community property. It is hereby further mutually agreed to between the parties herein, to-wit: "Wife" and "Husband" that the surviving spouse shall not make further testamentary disposition of the said assets of the deceased spouse's undivided one-half interest in the community estate, other than by testamentary disposition incorporating the terms of the Wills of the "Wife" and the "Husband" signed on the 23rd day of March, 1977, and the parties agree that the estate of these parties shall ultimately vest in the two children of the "Wife" and the three children of the "Husband".

2. It is hereby further mutually agreed to between the parties that the surviving spouse shall enter into an Agreement with a new marriage partner concerning the fact that all of the assets of the survivor of the "Wife" or the "Husband" shall remain as

separate property and shall not become community property with the surviving spouse and the new married partner.

3. The parties hereby mutually agree further that it is the desire and intention of the parties that the entire community estate of these parties as the same presently exists, shall remain in tact and ultimately shall be disbursed by the surviving spouse's Will to the two children of the "Wife" and the three children of the "Husband" in equal shares, share and share alike.

This second agreement, which made no mention of the 1967 community property agreement, contained mutual covenants preventing the surviving spouse from disposing of the deceased spouse's one-half interest in the couple's community property by any means other than the disposition identified in the agreement and the mutual wills. The agreement and the mutual wills provided that upon the death of both Odous and Lois, the community estate was to vest in equal shares in the couple's children by former marriages.

Less than 1 month after Odous and Lois executed the 1977 agreement and the mutual wills, Lois died. After her death, her will, together with the second agreement, was filed for probate and Odous Stafford was appointed the personal representative of Lois' estate. However, probate was never completed, apparently because Odous's attorney was disbarred shortly after Lois' will was admitted to probate.

Ten years later, in 1987, Odous executed a new will, leaving his entire estate to his own three children and leaving nothing to his stepchildren. In 1989, Odous died and his daughter, JoAnne Stafford, filed Odous' will for probate. Approximately 1 month later, Lois Stafford's daughter, Mary-Lynne Higgins, filed a petition on behalf of herself and her brother, seeking to intervene, to declare Odous' 1987 will invalid, and to enforce the 1977 agreement between Lois and Odous Stafford. Higgins also filed a creditors' claim under RCW 11.40.010, requesting 40 percent of the total value of Odous' estate. On October 25, 1989, Higgins sued Stafford, seeking specific performance of the terms of the mutual wills and will agreement. The parties filed cross motions for summary judgment. The trial court granted Higgins' summary

judgment motion, holding the 1977 agreement was enforceable. Stafford appealed that judgment and the Court of Appeals certified the case to this court.

## I

At issue is whether the 1967 community property agreement was rescinded by the 1977 mutual wills and will agreement. Stafford maintains the 1967 community property agreement remained in force after the mutual wills were executed and controlled the disposition of Lois' property. She argues when a community property agreement conflicts with another disposition of property, the community property agreement controls. *See, e.g., Lyon v. Lyon*, 100 Wn.2d 409, 415, 670 P.2d 272 (1983) (community property agreement controls over joint tenancy and converts joint tenancy into tenancy in common); *Neeley v. Lockton*, 63 Wn.2d 929, 935, 389 P.2d 909 (1964) (community property agreement controls over beneficiary designation in a company pension plan); *Harris v. Harris*, 60 Wn. App. 389, 399, 804 P.2d 1277 (community property agreement controls over beneficiary designation for retirement annuity), *review denied*, 116 Wn.2d 1025 (1991). We disagree. Several of the cases cited by Stafford do not involve testamentary dispositions of property and thus leave unanswered the question whether a prior community property agreement always prevails over subsequent mutual wills. To answer this question, we must turn to the law governing community property agreements and to cases involving conflicts between wills and community property agreements.

Community property agreements are controlled by a single statute. RCW 26.16.120 reads:

> Nothing contained in any of the provisions of this chapter or in any law of this state, shall prevent the husband and wife from jointly entering into any agreement concerning the status or disposition of the whole or any portion of the community property, then owned by them or afterwards to be acquired, to take effect upon the death of either. But such agreement may be made at any time by the husband and wife by the execution of an instrument in writing under their hands and seals, and to be witnessed, acknowledged and certi-

fied in the same manner as deeds to real estate are required to be, under the laws of the state, *and the same may at any time thereafter be altered or amended in the same manner.* . . .

(Italics ours.) RCW 26.16.120.

Appellant Stafford argues, under RCW 26.16.120, the only way to rescind a community property agreement is to execute a document expressly indicating a mutual intent to rescind the agreement and to file the document in the same manner required for the execution of such a document. Thus, Stafford contends because the mutual wills and 1977 agreement failed to meet these criteria, these documents could not rescind the 1967 community property agreement.

■ We do not construe RCW 26.16.120 so narrowly. When we are interpreting a statute, we give effect to the plain meaning of the statutory language. *Cherry v. Municipality of Metro Seattle*, 116 Wn.2d 794, 799, 808 P.2d 746 (1991). Here, RCW 26.16.120 provides that community property agreements may be *altered or amended* in the same manner as their execution. The statute is silent as to how a community property agreement may be rescinded.

■ Community property agreements are treated as contracts, and the general rules of contract rescission apply. *See In re Estate of Lyman*, 7 Wn. App. 945, 948, 503 P.2d 1127 (1972), *aff'd*, 82 Wn.2d 693, 512 P.2d 1093 (1973). Of course, as with any other contract, "[a]n agreement to rescind a community property agreement must itself be a valid agreement". *In re Estate of Ford*, 31 Wn. App. 136, 139, 639 P.2d 848 (1982). The parties may abandon a community property agreement, "by mutually manifested intention clearly shown". *Lyman*, 7 Wn. App. at 948. The court will give great weight to evidence of the parties' intent, "look[ing] to the wording of the written agreements . . ., and consider[ing] all the circumstances surrounding the transaction, including the subject matter and subsequent acts of the parties". *In re Estate of Brown*, 29 Wn.2d 20, 28, 185 P.2d 125 (1947).

■ Generally, when two contracts are in conflict, the legal effect of a subsequent contract made by the same parties and covering the same subject matter, but containing incon-

sistent terms, "is to rescind the earlier contract. It becomes a substitute therefor, and is the only agreement between the parties upon the subject." *Bader v. Moore Bldg. Co.*, 94 Wash. 221, 224, 162 P. 8 (1917) (quoting *Sherman v. Sweeny*, 29 Wash. 321, 329, 69 P. 1117 (1902)).

Several Washington cases illustrate the application of these principles in conflicts between wills and community property agreements. In *In re Estate of Wittman*, 58 Wn.2d 841, 365 P.2d 17 (1961), a husband and wife executed a statutory community property agreement that vested all property in the surviving spouse upon the death of the other spouse. *Wittman*, 58 Wn.2d at 842. Subsequently, the husband and wife each unilaterally executed wills that conflicted with the community property agreement. The trial court held the Wittmans had not abandoned the agreement, relying in part on evidence that the spouses' subsequent inconsistent wills had been executed separately and without the knowledge of the other spouse. *Wittman*, 58 Wn.2d at 843. We affirmed, agreeing that evidence of unilateral acts inconsistent with the existence of the agreement are not enough. A mutual intent to abandon or rescind must be demonstrated. *Wittman*, 58 Wn.2d at 844-45.

In *In re Estate of Ford*, 31 Wn. App. 136, 639 P.2d 848 (1982), a husband and wife executed a statutory community property agreement, which vested all property in the surviving spouse upon the death of the other spouse. *Ford*, 31 Wn. App. at 137-38. Later, the wife "executed a will which left all of her assets to her four children from a previous marriage". *Ford*, 31 Wn. App. at 138. Three years later, the husband executed a quitclaim deed to the wife for two parcels of real estate. "The deed conveyed the property to Mrs. Ford 'as her sole and separate property . . . including any interest therein which grantor may hereafter acquire.' " *Ford*, 31 Wn. App. at 138. The wife died first and the husband sought enforcement of the community property agreement, including the deeded property.

The trial court held, and the Court of Appeals agreed, that despite the wife's inconsistent will, there was no evi-

dence of mutual rescission of the entire community property agreement. However, both courts found sufficient evidence of a mutual intent to modify the community property agreement as to the parcels of land deeded by the husband. *Ford*, 31 Wn. App. at 140. The court found the language used by Mr. Ford in his quitclaim clearly expressed his intent to convey his community interest to his wife, and thus to modify the community property agreement. Likewise, Mrs. Ford's acceptance of the deed manifested her intent to modify the agreement. *Ford*, 31 Wn. App. at 139-40.

In *In re Estates of Wahl*, 99 Wn.2d 828, 664 P.2d 1250 (1983), the court faced a conflict between reciprocal wills and a community property agreement. In *Wahl*, both the husband's and wife's wills, executed separately, "provided that a person would not be deemed to 'survive' the testator if that person died within 90 days after the testator's death". *Wahl*, 99 Wn.2d at 829. Later, the Wahls executed a community property agreement that provided that upon the death of either spouse, the couple's community property would vest in the surviving spouse, and the same day "executed codicils in which they expressly reaffirmed all the provisions of their respective previous wills . . . .". *Wahl*, 99 Wn.2d at 829.

The couple died within 90 days of one another and a will dispute erupted. The trial court granted summary judgment for Mr. Wahl's sister, who claimed the entire estate under the community property agreement. Applying general rules of contract interpretation, we found the inconsistency between the survivorship clause in the wills and the community property agreement created an ambiguity, "which require[d] the admission of extrinsic evidence to ascertain the intent of the parties". *Wahl*, 99 Wn.2d at 831. The court remanded the case for a determination of the couple's intent with respect to the interaction of the wills and the community property agreement. *Wahl*, 99 Wn.2d at 832.

Finally, *Norris v. Norris*, 25 Wn. App. 290, 605 P.2d 1296, *aff'd*, 95 Wn.2d 124, 622 P.2d 816 (1980) also involved competing claims under a community property agreement and reciprocal wills. The Norrises first executed reciprocal

wills giving the surviving spouse a life estate in their property, and leaving the remainder to their son and grandson. Later, the couple executed a community property agreement, believing "such an agreement would result in substantial probate and tax savings". *Norris*, 25 Wn. App. at 292. After Mrs. Norris died, Mr. Norris consulted an attorney and discovered unfavorable tax consequences would result under the community property agreement rather than the probate of his wife's will. Mr. Norris then elected to probate his wife's will. Norris, 25 Wn. App. at 292. Five years later, a family dispute resulted in a court battle over the ownership of the property. Mr. Norris claimed a fee simple interest in the property by virtue of the community property agreement. The court disagreed, holding Mr. Norris's acceptance of benefits under the will constituted a disclaimer of benefits under the community property agreement. *Norris*, 25 Wn. App. at 297.

■ These cases establish that mutual intent to rescind a community property agreement must be demonstrated; unilateral acts inconsistent with the agreement are not enough. However, intent need not be expressly stated. Mutual acts having the effect of rescinding the agreement are sufficient. Thus, the remaining question in this case is whether Odous and Lois sufficiently manifested an intent to rescind or abandon the 1967 community property agreement by executing mutual wills that squarely conflict with the 1967 agreement.

## II

Stafford argues summary judgment was improper in this case because Odous and Lois' intent regarding the effect of the mutual wills on the prior community property agreement is a question of fact and the evidence was insufficient to establish an intent to abandon or rescind the 1967 agreement.

■■ This court engages in the same inquiry as the trial court when it reviews the trial court's order of summary judgment. *Simpson Tacoma Kraft Co. v. Department, of Ecology*, 119 Wn.2d 640, 835 P.2d 1030 (1992). A motion for

summary judgment may be granted only if, "after viewing all the pleadings, affidavits, depositions, admissions and all reasonable inferences drawn therefrom in favor of the nonmoving party", the trial court finds, "(1) that there is no genuine issue as to any material fact, (2) that all reasonable persons could reach only one conclusion, and (3) that the moving party is entitled to judgment as a matter of law". *Peterick v. State*, 22 Wn. App. 163, 180-81, 589 P.2d 250 (1977), *review denied*, 90 Wn.2d 1024 (1978), *overruled on other grounds in Stenberg v. Pacific Power & Light Co.*, 104 Wn.2d 710, 709 P.2d 793 (1985).

The burden of proof is on the moving party to establish these elements. *Barber v. Bankers Life & Cas. Co.*, 81 Wn.2d 140, 142, 500 P.2d 88 (1972). However, the nonmoving party "may not rely on speculation, argumentative assertions that unresolved factual issues remain . . . ." *Peterick*, 22 Wn. App. at 181.

■ We find the evidence of intent present in this case — the mutual wills and 1977 will agreement—is sufficient as a matter of law to establish an intent to abandon or rescind the community property agreement. Unlike the wills in *In re Estate of Wittman, supra,* the Staffords's wills were inextricably intertwined and each spouse's will mentioned not only the will of the other spouse but also the 1977 agreement executed by each spouse. The 1977 agreement explicitly expressed, "it is the desire of both 'Wife' and 'Husband' that an Agreement be entered into concerning the surviving spouse and a limitation upon that said surviving spouse's testamentary disposition of the deceased spouse's one-half interest in the community assets . . . ." These are precisely the factors the *Wittman* court looked for, but could not find, as evidence of mutual intent.

The analysis in *Estate of Ford* similarly supports a finding of mutual intent to abandon the 1967 agreement in this case. In *Ford*, the couple executed a subsequent agreement — the quitclaim deed — that had the effect of modifying or rescinding part of the community property agreement without any express intention to do so. The court found the lan-

guage used by Mr. Ford in his quitclaim deed sufficiently expressed his intent to convey his community interest to his wife, and thus modify the community property agreement. Likewise, Mrs. Ford's acceptance of the deed sufficiently manifested her intent to modify the agreement. *Ford,* 31 Wn. App. at 139-40. Despite no express words of modification, and by a means not identical to the creation of a community property agreement, the court held the Fords had effectively modified their community property agreement. Like the Fords, the Staffords executed a subsequent agreement that had the effect of rescinding the community property agreement without any express intention to do so.

Stafford argues the execution of the 1977 agreement and mutual wills does not compel a finding of an intent to rescind the 1967 agreement. She asserts Lois and Odous could have intended the 1977 will agreement and mutual wills to coexist with the 1967 community property agreement, with the 1977 agreement controlling the disposition of any property not subject to the community property agreement. Alternately, Stafford contends Odous and Lois' failure to revoke the 1967 community property agreement manifests their intent to allow the survivor the option of taking the decedent's share of the community property under the community property agreement or under the will. However, Stafford points to no evidence in support of these alternate theories.

The evidence in the record amply demonstrates Odous and Lois mutually agreed to covenants preventing the surviving spouse from disposing of the deceased spouse's property by any means other than the disposition identified in the 1977 agreement and mutual wills. This agreement and the 1967 community property agreement are squarely in conflict. If the community property agreement controlled, Odous took Lois' property in fee simple, immediately upon Lois' death. Taking the property in fee simple, Odous could make any testamentary disposition he desired. In contrast, if the 1977 agreement controlled, Odous was limited to the testamentary disposition identified in the wills. Because the conflicting agreements controlled the disposition of all of the

Staffords' property, these agreements could not coexist. Passing the property under one agreement necessarily rendered the other agreement a nullity.

We conclude Odous and Lois intended the 1977 will agreement and mutual wills to control the disposition of their property. This conclusion is consistent with the principles that couples are free to abandon a community property agreement "by mutually manifested intention clearly shown", *Estate of Lyman*, 7 Wn. App. at 948, and that a subsequent conflicting contract rescinds the earlier contract. *Bader*, 94 Wash. at 224.

Stafford further argues if the legal effect of the will is to take precedence over the community property agreement, both parties were operating under a mutual mistake. She draws an analogy to *Estates of Wahl*, in which the court found the Wahls may have been "mutually mistaken as to their rights to inherit under their wills and codicils, as they were not advised of the legal effect of the community property agreement executed the same day". *Wahl*, 99 Wn.2d at 832. However, the interaction between the 90-day survivorship clause and the community property agreement created an ambiguity not present in this case. In addition, in *Wahl*, there was testimony as to the couple's intent regarding their testamentary disposition. *Wahl*, 99 Wn.2d at 831. Here, Stafford presents no evidence that Lois and Odous were similarly mistaken. The 1977 agreement clearly expressed the intent that the surviving spouse took the property subject to the testamentary limitation.

Stafford also contends the fact that probate of Lois' will was not completed during Odous' lifetime evidences Odous' election to take under the community property agreement. Conversely, Higgins argues the submission of Lois' will to probate is sufficient, under *Norris*, to establish Odous elected to take under Lois' will. Here, both parties appear to draw inferences of intent that are not supported by the evidence. Shortly after Odous admitted Lois's will for probate, his attorney was disbarred. Afterward, no action was taken to complete probate until after this will dispute

ensued. The failure to complete probate appears to be due more to the absence of legal counsel than to any specific intent regarding an election to take under the community property agreement or Lois' will.

Stafford's final two arguments again rely on the premise that the community property agreement remained in force and controlled the disposition of Lois' property. Stafford contends the 1967 community property agreement caused Lois' property to vest in Odous immediately upon the death of Lois. Thus, there was no property to pass by Lois' will. Stafford further contends the 1977 agreement is void for lack of consideration. Because we hold the mutual wills and will agreement effectively rescinded the 1967 community property agreement, we find no merit to these arguments.

### III

We hold a community property agreement may be rescinded or abandoned by mutual intent clearly demonstrated. This holding is consistent with well-established contract principles in this state. As long as a mutual intent to abandon or rescind a prior community property agreement is adequately established, mutual wills can control over a prior community property agreement.

The evidence presented in this case consisted primarily of the documents themselves: the 1967 community property agreement; the 1977 will agreement; the 1977 mutual wills; Odous' 1987 will; and the documents concerning probate of Lois' will. Two conclusions can be drawn from the evidence that support granting plaintiffs' summary judgment motion. First, the 1967 agreement and the 1977 agreement squarely conflict and cannot coexist. Second, the mutual wills and 1977 agreement, executed after the community property agreement, expressly articulate a desire by both spouses to limit the testamentary disposition of their property, and to condition receipt of the deceased spouse's property on this limitation. Thus, we find the effect of the latter agreement was to rescind the

earlier agreement. Accordingly, we hold the trial court correctly resolved this issue as a matter of law.

ANDERSEN C.J., and UTTER, BRACHTENBACH, DOLLIVER, DURHAM, SMITH, GUY, and MADSEN, JJ., concur.