IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ELIZABETH R. SUTHERLIN, | ) | |
| | ) | No. 34370-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SCOTT K. SUTHERLIN, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Scott Sutherlin obtained an ex parte temporary restraining order (TRO) to prevent his ex-wife from disposing of funds that he argued should be applied to a long-outstanding equalization obligation owed by her under their dissolution decree. The same court commissioner who issued the TRO later quashed it. The superior court denied a motion to revise.

We read the decree and a relevant postjudgment settlement agreement differently than did the trial court. But a genuine dispute over what amount, if any, Mr. Sutherlin's ex-wife was presently required to pay was a sufficient basis for refusing to revise the order quashing the TRO. We affirm.

FACTS AND PROCEDURAL BACKGROUND

Scott Sutherlin and his ex-wife Elizabeth (Sutherlin) Corulli divorced in April 2006. The decree of dissolution provided that Ms. Corulli would retain the family home and make an equalization payment of $29,100 to Mr. Sutherlin for his interest in the

property. This appeal arises from Mr. Sutherlin's motion for an order requiring Ms.

Corulli "to immediately pay the equalization transfer amount ordered by this Court

pursuant to the Decree of Dissolution," and for an ex parte temporary order restraining

her from disposing of certain funds until his motion could be heard. Clerk's Papers (CP)

at 19.

In support of the motion, Mr. Sutherlin presented the court with the following

payment term from the parties' dissolution decree, together with his sworn declaration

that Ms. Corulli had paid nothing toward the equalization obligation in the nine years

since their divorce:

> Wife shall owe husband an equalization payment in the amount of $29,100.
> This amount shall bear no interest and wife shall pay at her ability. Wife
> shall have an affirmative duty to make good faith and reasonable efforts to
> remit payment in a prompt and timely manner so as not to take advantage
> of husband's agreement to waive interest and specific repayment terms. If
> wife sells home, husband shall receive the first $29,100 payable directly
> from the net proceeds of the sale at the time of closing. If wife refinances
> the mortgage on the home, wife shall refinance an amount sufficient to
> repay husband the full equalization payment balance owing at the time of
> the refinance. If equalization payment has not been paid in full by the time
> that the parties' youngest child graduates from high school, payment shall
> be due in full within 90 days of child's graduation.

CP at 10. While Mr. Sutherlin acknowledged that one of the parties' children was still in

high school and living at home, he provided evidence of investment properties his wife

had inherited from her father and of a $241,352 promissory note under which she was

receiving payments from her siblings. He contended that Ms. Corulli "clearly has the

2

ability to repay me what is owed." CP at 20. A court commissioner issued a TRO and

set a hearing at which Ms. Corulli could show cause why the relief requested by Mr.

Sutherlin should not be granted.

Upon receiving notice of the restraining order, Ms. Corulli moved to quash it and

brought to the court's attention a postdecree "Voluntary Settlement Agreement" in the

dissolution action, signed by herself and Mr. Sutherlin on June 27, 2007. CP at 50-51. It

was self-described as "a fair and reasonable resolution" following mediation of several

issues. CP at 50. The following language appears under the caption, "Liabilities outline

[sic] in Decree of Dissolution":

> The parties intend to abide by the Decree of Dissolution regarding the court ordered debt of twenty-nine thousand one hundred dollars ($29,100.00). The terms of payment are outlined in the Decree, however the parties want to add clarity to ensure the understanding between the parties regarding payment of the debt.
>
> Both parties agree the debt will not be due until 90 days after their youngest daughter . . . graduates as a senior in high school . . . . The approximate graduation date is June 2017. The approximate date the debt is to be paid in full is September 2017. In the event the debt can be paid prior to that, the paying party may do so without any prepayment penalty. Should the child not complete high school for any reason, the debt is still due 90 days after what would have been the child's anticipated graduation date. In addition, the debt will be due and payable upon the resale or refinancing of the home located at 11214 E. 44th Ave., Spokane, WA. This loan will be forgiven should the defendant become deceased before the debt is due as clarified above.
>
> Both parties also agree defendant has received a payment of $600.00 and a credit of $375.00. The new balance, effective today, June 27, 2007 is

3

> $28,125.00. The parties further agree that this is a non interest bearing loan
> and shall remain the same until the loan has been paid in full.

CP at 50. A notice provision included in the settlement agreement states that "if the terms of this agreement are not carried out, then, following written notice to the non-complying party, of not less than ten days and by certified mail, return receipt requested, that judgment by default will be presented at Court for non-compliance." CP at 51.

An affidavit from Ms. Corulli acknowledged she had inherited what she characterized as three dilapidated rental homes from her father and received $1,000 a month in payments from her siblings for her former interest in two other properties. In response to Mr. Sutherlin's contention that her inheritance "changes things," she responded, "It does not." CP at 48. According to Ms. Corulli, money she had recently received had been applied to obligations that were "significantly past due" and she and the parties' son faced legal exposure for a recent auto accident, in her car, for which her son had been found at fault. *Id.*

At a hearing on the motion to quash, the court commissioner expressed his displeasure that Mr. Sutherlin failed to disclose the settlement agreement. The commissioner granted the motion to quash, stating that although he did not read the settlement agreement as modifying Ms. Corulli's duty under the decree, it was unclear from the record whether Ms. Corulli had the ability to make payments toward the

4

equalization obligation. The commissioner commented on what he thought needed to happen next:

> I've read Ms. Corulli's . . . declaration. Whether or not she's needing to use those funds for other aspects—she mentions a child getting into an accident, that she's trying to deal with—the affirmative duty I don't think goes away, but I'm not going to continue the restraining order at this point. I think this is more of a discovery issue that the parties need to deal with going forward.
> And if it can be . . . found out that Ms. Corulli really did have this extra income and has not been performing her affirmative duty, I think that could be another hearing down the road but I'm not going to continue the restraining order at this point. . . .
>
>     . . . .
> [MR. SUTHERLIN'S ATTORNEY]: Just to clarify for my own understanding, are you finding that what was determined in the mediation agreement is substantively different than what was in the decree?
> THE COURT: No.

CP at 100-02.

The commissioner apparently entered no written order, and in his oral ruling merely quashed the TRO. Although there was discussion toward the end of the hearing about Mr. Sutherlin's right to seek discovery and then schedule a hearing on his motion to compel the equalization payment, Mr. Sutherlin did neither.[1] Instead, he moved in superior court for revision of the commissioner's oral ruling.

After reviewing the file and hearing argument of the revision motion, the trial

---

[1] Evidently some discovery occurred in connection with a separate child support modification order, but it was not used as the basis for a further decision on the motion to compel the equalization payment.

5

court denied it, explaining its decision as follows:

> Well, I'm going to affirm the commissioner, and in large part it's because of what the Voluntary Settlement Agreement provides. . . .
>
> . . . .
>
> . . . [The] settlement agreement was entered into on June 27, 2007, and in part this provides that both parties agree the debt will not be due until 90 days after their youngest daughter . . . graduates as a senior from high school, which would be approximately June 2017. It goes on in other parts to provide that it may not be due until September of 2017. And then now I quote, "In the event that the debt can be paid prior to that, the paying party," I emphasize, "may do so without any prepayment penalty." The way I interpret that is that there isn't really any obligation to pay until September of 2017, but if you do pay early, there wouldn't be any prepayment penalty. And with respect to notice of ex-parte restraining order, in the last paragraph of this agreement, it says, "We further agree that if the terms of this agreement are not carried out, then following written notice to the noncomplying party of not less than 10 days and by certified mail return receipt requested judgment by default may be entered.
>
> So to me, it's clear that the Parties contemplated that this agreement would control. The commissioner was correct by vacating the restraining order. And the agreement itself and the rules, I think, under these circumstances, required notice. That's my ruling.

Report of Proceedings (RP) at 14-15. Mr. Sutherlin moved for reconsideration, which was denied. He appeals.

## ANALYSIS

### I. It was not error or an abuse of discretion to refuse to revise the order quashing the TRO

*Standard of review.* RCW 26.09.060(2)(a) authorizes a trial court in a dissolution proceeding to issue a temporary restraining order providing relief "proper in the circumstances," including one that restrains a party from disposing of property except in

6

the usual course of business or for the necessities of life. When a trial court's interpretation of a contract is based solely on its language, that interpretation is a question of law reviewed de novo. *Tyrrell v. Farmers Ins. Co.*, 140 Wn.2d 129, 133, 994 P.2d 833 (2000). The decision to grant or dissolve a temporary injunction "lies within the sound discretion of the court, to be exercised according to the circumstances of each case." *Alderwood Assocs. v. Wash. Envtl. Council*, 96 Wn.2d 230, 233, 635 P.2d 108 (1981); *Schroeder v. Excelsior Mgmt. Grp., LLC*, 177 Wn.2d 94, 103-04, 297 P.3d 677 (2013).

"A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). A decision is manifestly unreasonable if, given the facts and applicable legal standard, it is outside the range of acceptable choices; "it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." *Id.* at 47.

*Decision reviewed.* When a party appeals a trial court order denying revision of a commissioner's decision, this court generally reviews the trial court's decision, not the commissioner's. *In re Marriage of Williams*, 156 Wn. App. 22, 27, 232 P.3d 573 (2010). "If the [trial] court simply denies the motion to revise the commissioner's findings or conclusions, [appellate courts] have held that the court then adopts the commissioner's findings, conclusions, and rulings as its own." *Grieco v. Wilson*, 144 Wn. App. 865, 877,

7

184 P.3d 668 (2008), *aff'd sub nom.*, *In re Custody of E.A.T.W.*, 168 Wn.2d 335 (2010). "But when the court makes independent findings and conclusions, the court's revision order then supersedes the commissioner's decision." *Id.*

In proceedings below, the court commissioner merely quashed the TRO. He indicated that he viewed the 2007 clarification in the settlement agreement as continuing to include an obligation on Ms. Corulli's part to make payments toward the equalization obligation if she was financially able to prior to the ultimate September 2017 due date. But the commissioner recognized that a factual dispute existed over whether she *was* financially able to pay earlier—one that could not be resolved on the basis of conflicting declarations.

The trial court, on the other hand, affirmed the commissioner's decision to quash the restraining order "in large part" because it construed the clarification provided by the mediated settlement agreement as imposing no obligation on Ms. Corulli to make the equalization payment until September 2017. RP at 14. It also concluded that since the notice provision of the settlement agreement had not been complied with, Ms. Corulli's use of her assets should not have been restrained. Because the trial court did more than simply deny the motion to revise, its decision supersedes the commissioner's and is the order that is subject to appellate review in the first instance.

Two of Mr. Sutherlin's assignments of error are to the trial court's alleged determination that the parties' settlement agreement "modif[ied]" or was a

"modification" of their dissolution decree. Br. of Appellant at 2 (Assignments of Error 8 and 9). A claim that the court found a "modification" would conflict with the settlement agreement's language that "[t]he parties intend to abide by the Decree" regarding the court-ordered debt and that "[t]he terms of payment are outlined [in the] Decree, however the parties want to add clarity to ensure the understanding between the parties regarding payment of the debt." CP at 50.

Where, as here, an understanding is affirmed but clarified, both the original agreement and the clarification should be enforced to the extent possible; to the extent they are inconsistent, the clarification controls. *See Higgins v. Stafford*, 123 Wn.2d 160, 165-66, 866 P.2d 31 (1994) (when two contracts conflict, the subsequently negotiated contract covering the same subject controls). The decree includes several events requiring payment toward the equalization obligation: "wife shall pay at her ability," she must pay upon the sale or refinancing of the home, and if the equalization payment has not earlier been paid in full, "payment shall be due in full within 90 days of [the youngest] child's graduation" from high school. CP at 10.

The decree's language requiring Ms. Corulli to "make good faith and reasonable efforts to remit payments in a prompt and timely manner" is not reasonably read as a further event requiring payment. It only imposes a duty of diligence when one of the payment events occurs. "Prompt" and "timely" are meaningless except in relation to some other payment event.

9

The clarification in the settlement agreement states:

Both parties agree the debt will not be due until 90 days after their youngest daughter . . . graduates as a senior in high school . . . . The approximate graduation date is June 2017. The approximate date the debt is to be paid in full is September 2017. In the event the debt can be paid prior to that, the paying party may do so without any prepayment penalty.

CP at 50.

In isolation, this language can be read as the trial court read it. But read in combination with the decree—which the settlement agreement says "outline[s]" "[t]he terms of payment" and with which the parties "intend[ed] to abide"—this language is not inconsistent with the "at [wife's] ability" payment event included in the decree. CP at 50, 10. The first and third sentences of the settlement agreement language we cite above are reasonably read as referring to the outside date for payment ("the debt will not be *due* until 90 days after [graduation]"; "approximate date the debt is to be paid *in full* is September 2017"). *Id.* (emphasis added). Thus read, the language, "In the event the debt *can* be paid prior to that," *Id.* (emphasis added), is reasonably read as affirming Ms. Corulli's duty to pay "at her ability."[2] CP at 10.

_____

[2] Given our construction of the decree and settlement agreement, it is probably not necessary to address Mr. Sutherlin's argument that Ms. Corulli failed to establish the elements of an enforceable contract. In any event, we reject his premise that Ms. Corulli bore that burden in responding to the order to show cause, even before he questioned the settlement agreement's validity and enforceability.

10

Since we can affirm the trial court on any ground supported by the record, *see LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989), we hold that given the evidence available at the hearing on the order to show cause, the equitable criteria supporting an injunction were absent. RCW 26.09.060(2)(a)'s authorization to trial courts to issue temporary restraining orders "proper in the circumstances" inherently incorporates the equitable criteria governing the issuance of any injunction: a party seeking relief by temporary or permanent injunction must show "'(1) that he has a clear legal or equitable right, (2) that he has a well-grounded fear of immediate invasion of that right, and (3) that the acts complained of are either resulting in or will result in actual and substantial injury to him.'" *Tyler Pipe Indus., Inc. v. Dep't of Revenue*, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982) (quoting *Port of Seattle v. Int'l Longshoremen's & Warehousemen's Union*, 52 Wn.2d 317, 319, 324 P.2d 1099 (1958)). Mr. Sutherlin had not demonstrated a clear right that was being invaded. Injunctions "'will not issue in a doubtful case.'" *Id.* at 793 (quoting *Isthmian S.S. Co. v. Nat'l Marine Eng'rs' Beneficial Ass'n*, 41 Wn.2d 106, 117, 247 P.2d 549 (1952)).

Mr. Sutherlin suggests, without legal support, that the language of the order to show cause somehow made it incumbent on Ms. Corulli to irrefutably establish her inability to pay. He is mistaken; the TRO he requested and obtained was an extraordinary remedy and it remained his burden to demonstrate that extraordinary relief was warranted. We agree with the court commissioner that a decision whether Ms.

11

Corulli had a duty to make immediate payments toward the equalization obligation required a further hearing and would likely require discovery.

Because we affirm the trial court on a basis different from that challenged in Mr. Sutherlin's motion for reconsideration, his challenge to the denial of that motion is moot.

## II. Attorney fees

Mr. Sutherlin requests attorney fees under RAP 18.1(a), RCW 26.09.140, and on the basis of bad faith. A party is entitled to attorney fees if applicable law grants the right to recover them. RAP 18.1(a).

RCW 26.09.140 provides that "the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." When determining whether an award of fees is appropriate in a dissolution case, this court considers the parties' "relative ability to pay" and the "arguable merit of the issues raised on appeal." *In re Marriage of Leslie*, 90 Wn. App. 796, 807, 954 P.2d 330 (1998). While Mr. Sutherlin filed a financial declaration with this court, he did not attempt to include Ms. Corulli's income and deductions for comparison despite evidence in the record that he has access to that information from child support proceedings. For that reason, and because we find no merit in his contention that the TRO should have remained in place, we deny fees under RCW 26.09.140.

Mr. Sutherlin also argues that Ms. Corulli acted in bad faith by forcing him to bring motions to secure her compliance with her duty of good faith under the dissolution

12

decree. Facts are found by trial courts, not appellate courts, and no trial court has determined that Ms. Corulli had the ability but failed, following notice, to pay amounts toward the equalization obligation. We may award attorney fees where legal arguments are advanced in bad faith but no bad faith legal argument on Ms. Corulli's part has been shown.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Lawrence-Berrey, A.C.J.

Pennell, J.

13